IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TIMOTHY WHITE, | ) | No. 72028-7-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| SKAGIT COUNTY and ISLAND COUNTY, | ) | |
| | ) | FILED: July 13, 2015 |
| Respondents. | ) | |

BECKER, J. — Skagit and Island Counties denied a Public Records Act request for copies of voted ballots. In view of Washington's constitutional and statutory provisions protecting ballot secrecy, we hold the requested records are exempt.

The 2013 general election was held on November 5. The next day, Appellant Timothy White made a request of Skagit and Island Counties under the Public Records Act, chapter 42.56 RCW. He asked for "copies of electronic or digital image files" of all pretabulated ballots received, cast, voted, or otherwise used in the election.[1] Both counties denied the request.

_____

[1] White sent the same Public Records Act request to all counties in Washington State.

The Public Records Act requires that agencies make all public records available for inspection and copying, unless the record falls within the specific exemptions of RCW 42.56.070(6), chapter 41.56 RCW, or an "other statute" that exempts or prohibits disclosure of specific information or records. RCW 42.56.070(1). The issue in this case is whether copies of ballots are exempt under an "other statute." An exemption may be found in an "other statute" even if it is not stated explicitly. RCW 42.56.070(1); Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 263-64, 884 P.2d 592 (1994) (PAWS) (antiharassment statute was an "other statute" exempting the names of animal researchers from production pursuant to a request for a grant proposal even though the statute did not explicitly state the names were exempt).

The dispute came before the Snohomish County Superior Court on a show cause hearing on February 13, 2014. The court considered declarations submitted by the parties and by the Secretary of State. The court ruled that even though no statute states an explicit exemption for voted ballots, they are exempt under various election statutes codified in Title 29A RCW:

> The statutory scheme controlling ballots in RCW Chapter 29A is very long and complex and, therefore, how it expressly exempts ballots from public records disclosure cannot be found in just one quote from one statute. However, taken as a whole, RCW Chapter 29A expressly exempts election ballots from disclosure as public records.

In a comprehensive memorandum decision, the superior court observed that the secrecy of a citizen's vote "is the cornerstone of a free democratic government." "Given the numerous and unpredictable ways ballot disclosure could be used to ascertain voters' identities, given the possibility of human error if we rely on

2

people to individually redact thousands of ballots for identifying information, given the constitutional requirement for absolute secrecy, given the disruption to public confidence in election results that could be caused by endless private reviews of ballots," the court determined that the legislature did not intend to subject ballots to the Public Records Act.

White appeals.

Because the record consists of documentary evidence only, this court stands in the same position as the trial court. Mitchell v. Dep't of Corr., 164 Wn. App. 597, 602, 277 P.3d 670 (2011). Our review is de novo. Fisher Broad.-Seattle TV, LLC v. City of Seattle, 180 Wn.2d 515, 522, 326 P.3d 688 (2014).

## BALLOT SECRECY

The Washington Constitution requires the legislature to provide for a method of voting that will "secure to every elector absolute secrecy in preparing and depositing his ballot."

> **Ballot**
> All elections shall be by ballot. The legislature shall provide for such method of voting as will secure to every elector absolute secrecy in preparing and depositing his ballot.

WASH. CONST. art. 6, § 6.

The constitutional mandate for a secret ballot is implemented by statutes codified in Title 29A RCW. For example, all ballots, when received in their return envelopes, "must be placed in secure locations from the time of delivery to the county auditor until their subsequent opening. After opening the return envelopes, the county canvassing board shall place all of the ballots in secure storage until processing." RCW 29A.40.110(2). Immediately after tabulation, i.e.

3

counting, all ballots must be sealed in containers from which they may be removed only in narrowly specified circumstances. RCW 29A.60.110.

The record contains declarations by county employees explaining how ballots are processed. After signatures and postmarks are verified and the ballots have been removed and separated from the envelopes, ballots are manually inspected for damage, write-in votes, and incorrect or incomplete marks. Damaged and write-in ballots may be duplicated at this point "only if the intent of the voter's marks on the ballot is clear and the electronic voting equipment might not otherwise properly tally the ballot to reflect the intent of the voter." RCW 29A.60.125.

Digital images of all ballots do exist for a short time when ballots are scanned into the first of two computers. The images are then converted into a proprietary format. Once this conversion has taken place, the images do not exist as separate image files that can be exported or copied. The data is transferred to the second computer for tabulation. The information transferred does not contain images. It contains binary code that instructs the second computer program how to convert the marks into vote counts. The second computer runs a program that tabulates the votes. Scanning and tabulation of votes continues as necessary until the election is certified. While this process occurs, all ballots—including originals and duplicates—are maintained in a secure area from the moment they are deposited or received until they are eventually destroyed.

White maintains that he is entitled to copies of the digital image files of all ballots pretabulation, that is, as they existed before the images are converted into the data that is transferred to the second computer for tabulation. He requested that the copies be transmitted to him in a format readable on his home computer.

The counties resist White's request in part to protect ballot secrecy and in part because of practical considerations. As far as practicality is concerned, the counties state that their current technology does not automatically store image files of ballots in a format readable on a home computer. They explain that it would take so much time to "screen print" each ballot as it goes through the scanner that it would interfere with the timely administration of the election and certification of the results.

In resolving this dispute, we will assume that it may be technologically feasible—if not now, then perhaps in the future—to make copies of electronic or digital image files of all pretabulated ballots without delaying the election results. Even so, the fundamental issue that must be addressed is whether ballot images are exempt as a matter of law from production under the Public Records Act.

White argues that the image files he has requested are "election records," not "ballots." In his view, "each voter has only one ballot per election, not many." The paper ballot on which the voter's choice is recorded is, according to White, the only legal "ballot" as that term is used in Title 29A RCW. Copies and images of ballots, he contends, are unprotected by the statutes implementing the constitutional mandate for ballot secrecy.

5

A statute lists four definitions of "ballot," to be chosen "as the context implies":

> (1) "Ballot" means, as the context implies, either:
> (a) The issues and offices to be voted upon in a jurisdiction or portion of a jurisdiction at a particular primary, general election, or special election;
> (b) A facsimile of the contents of a particular ballot whether printed on a paper ballot or ballot card or as part of a voting machine or voting device;
> (c) A physical or electronic record of the choices of an individual voter in a particular primary, general election, or special election; or
> (d) The physical document on which the voter's choices are to be recorded

RCW 29A.04.008(1). White's preferred definition—"The physical document on which the voter's choices are to be recorded"—is only one of the four definitions. RCW 29A.04.008(1)(d).

In Title 29A RCW, the legislature has gone into great detail to ensure that the process of collecting, counting, storing, and ultimately destroying ballots achieves the constitutional mandate for a secret ballot. The only statutory provision for copying of ballots is found in RCW 29A.60.125. The statute permits duplication "only if the intent of the voter's marks on the ballot is clear and the electronic voting equipment might not otherwise properly tally the ballot to reflect the intent of the voter." Ballots must be duplicated by teams of two people, and those people must record their actions in writing to create and maintain an audit trail of the actions they take. RCW 29A.60.125. Original and duplicate ballots must be sealed in secure storage at all times, "except during duplication, inspection by the canvassing board, or tabulation." RCW 29A.60.125.

6

The statutes governing the handling and storage of ballots must be interpreted in the context provided by the constitutional mandate for ballot secrecy. In that context, the term "ballot" does not just refer to the physical document on which the voter's choices are marked. A facsimile, a physical copy, an electronic record or image file of the physical document on which the voter places a mark is just as much a "ballot" as the physical document itself. The statutes do not in any way suggest that the legislature meant to allow electronic or digital images of ballots to be more available for public inspection and copying than the original ballots. We interpret the fourfold definition of "ballot" as reflecting legislative intent to define "ballot" as broadly as possible to fulfill the constitutional mandate for absolute secrecy.

Releasing voted ballots for general public inspection would risk revealing the identity of individual voters. According to a declaration from the Elections Director in the Office of the Secretary of State, voters sometimes place identifying marks on ballots contrary to voting instructions, for example by signing their names when making corrections or by writing comments about their intent. Each time ballots are handled, there is the potential to misplace, damage, or lose them. And as the Elections Director explains, where there is low turnout in a small precinct, even a ballot devoid of identifying marks can be tied back to a voter by comparing it with voters credited with returning ballots on particular dates.

Releasing copies or images presents the same risk of identification of voters as disclosure of the paper ballot. To hold that a copy or duplicate or

7

image file must be produced in response to a public records request would undermine the constitutional mandate for absolute secrecy of ballots. We conclude that the records White requests are "ballots" and they are subject to the strict statutory regulation of ballot handling and storage.

White argues that the statutory objective is to keep ballots secure, an objective he believes can be met while still allowing copies to be produced upon request. White points out that when there is an election contest, members of the public are allowed to serve as witnesses to the recounting of ballots. RCW 29A.64.030; RCW 29A.64.041(3); ch. 29A.68 RCW. In White's view, any member of the public should similarly be allowed to see scanned images of ballots before tabulation occurs. Such public access to the process, he argues, would ensure that the process of judging questionable or ambiguous ballots is not corrupted by tampering or distorted by incompetence.

The amicus brief of the Secretary of State succinctly describes the many provisions that already exist for citizen oversight of elections:

> The political parties and other organizations can designate official observers whom the county auditors must allow to observe the county's centralized counting center where ballots are processed. RCW 29A.40.100; RCW 29A.60.170. Before an election, observers and the public must be permitted to observe testing of vote tallying systems. RCW 29A.12.130. Once ballot processing begins, counting centers must be open to the public. RCW 29A.60.170; WAC 434-261-010. Anyone can watch, but only employees and those specifically authorized by the county auditor can touch any ballot, ballot container, or vote tallying system. WAC 434-261-010. Political party observers can call for a random check of ballot counting equipment. RCW 29A.60.170(3). Observers may also attend any recount, though they cannot handle ballots or record information about voters or votes. RCW 29A.64.041.
> When election officials question the validity of a challenged or provisional ballot, or when the intent of the voter cannot be

8

resolved, the county canvassing board determines how the votes will be counted. RCW 29A.60.050, .140. Meetings of the county canvassing board are open public meetings. Notice must be published, and the board must make any rules available to the public. RCW 29A.60.140(5); WAC 434-262-025. Where canvassing boards display a ballot, they cover any marks that could destroy absolute ballot secrecy. See Const. art. VI, § 6.

Finally, the county auditor must prepare and make publicly available detailed reports that precisely reconcile the number of ballots received, counted, and rejected, including specific accounting for various ballot types (for example, provisional ballots). RCW 29A.60.235. Public oversight of ballot processing and tabulation from start to finish, along with public reconciliation reports, allow a public check on all elections.

White's argument that even greater transparency would promote public confidence in elections is a matter of policy for the legislature to consider. It is not supported by the statutes as they are currently written. Allowing observers at various stages of ballot processing is fundamentally different from allowing every member of the public to inspect images of every ballot cast. Ballot boxes are not to be opened nor votes recounted "on mere suspicion and on mere demand." Quigley v. Phelps, 74 Wash. 73, 81, 132 P. 738 (1913). The statutes that regulate the handling of ballots do not manifest a legislative intent to facilitate public inspection of voted ballots. They manifest a legislative intent to protect ballot secrecy by maintaining the integrity of ballot processing and tabulation.

The legislature's intent that Title 29A RCW serve as a comprehensive scheme restricting access to ballots is evident from the fact that the legislature has specified that certain nonballot election records may be disclosed to the public. See RCW 29A.08.720, .770, .810, .835; RCW 29A.40.130; RCW 29A.60.070, .195, .235. As stated by the trial court, it would be superfluous for the legislature to single out specific types of election records as subject to public

9

disclosure unless the legislature viewed them as "exceptions in a statutory scheme that otherwise does not permit public disclosure."

On occasion, courts in other states have allowed ballot images to be released to the public. White cites Marks v. Koch, 284 P.3d 118 (Colo. App. 2011), cert. dismissed as improvidently granted, No. 11SC816 (June 21, 2012), and Price v. Town of Fairlee, 2011 VT 48, 190 Vt. 66, 26 A.3d 26. These cases are not persuasive in our interpretation of Washington law, as they were decided within different statutory frameworks and under different factual circumstances.

We conclude that in Washington, all "ballots," including copies, are exempt from production under the Public Records Act by Title 29A RCW—an "other statute." The exemption is necessary to protect the "vital governmental function" of secret ballot elections. RCW 42.56.210(2). We join our colleagues in Division Two, who recently reached the same conclusion in White's similar appeal of a decision dismissing his action in Clark County. White v. Clark County, No. 46081-5-II (Wash. Ct. App. June 30, 2015).

## BALLOTS NOT SUBJECT TO REDACTION

"If there is information in a public record that is exempt and redaction and disclosure is possible, then it is required." Ameriquest Mortg. Co. v. Office of Attorney Gen., 177 Wn.2d 467, 487, 300 P.3d 799 (2013). White contends that redaction of potentially identifying marks from the electronic or digital copies of ballots will adequately serve the public interest in ballot secrecy protected by Title 29A RCW, while also accommodating the public interest in government transparency that is protected by the Public Records Act.

The trial court ruled that redaction would not make disclosure possible:

The constitutional mandate of *absolute* secrecy could not be adequately accomplished by just having government employees use their own discretion as to what is identifying on a ballot and what needs redaction. Nor are such employees even in a position to accurately ascertain what information could or could not be used to identify a vote. For example, only two citizens voted at the voting machine in this election. If someone had staked out the machines and saw who voted on them, that information combined with copies of the voting machine votes and metadata showing when they were cast could be used to identify who cast those votes. Likewise, patterns in voting data and how information can be used to identify voters may not be readily apparent to an election employee who may not have all election data before him at once or may not be a trained computer data expert. For example, disclosing a fax cover sheet separate from a fax vote would not seem problematic— unless you realized only one fax vote was cast. Likewise, a ballot with a write-in vote for John Smith may not seem on its face to identify who the voter is, unless you also know John Smith is the voter who cast the ballot. Election employees are not permitted to know who cast a ballot.

The sheer number of documents that would have to be reviewed for redaction by fallible humans without any rules or set procedures and the numerous unpredictable ways the documents could reveal voter identity are such that mistakes would be made absent clear protective rules and set procedures. If a ballot has a handwritten name is the chance someone will identify the handwriting a sufficient reason for nondisclosure? Is disclosure of a write-in vote in the same name as the voter a violation of absolute secrecy? Is a doodle on the ballot an identifying mark or not? A single mistake means the constitutional mandate for *absolute* secrecy is violated. The Washington Constitution does not allow a scheme that provides for only substantial secrecy and that occasionally allows the identity of voters casting ballots to be mistakenly revealed. Unbridled and undirected discretion vested in numerous employees as to what is or is not too great a risk for violating secrecy would not comply with the constitutional mandate. The Constitution requires *absolute* secrecy. Const. art. VI, § 6.

If the legislature intended to allow public disclosure of copies of individual ballots it constitutionally would have crafted substantial safeguards into that process to assure absolute secrecy. RCW Chapter 29A provides no procedures to protect the secrecy of the vote upon Public disclosure because public disclosure is not contemplated. The lack of any such statutory safeguards indicates the legislature had no intention that ballots be subject to public

11

disclosure. *Compare,* RCW 29A.60.230, providing a special protection for aggregating public election results when the number of voters is so low in a precinct that separate reporting of precinct results may reveal identity).

We agree with the trial court's reasoning. Redaction will not eliminate the risk that disclosing copies of ballots will reveal the identity of individual voters. Ballots are exempt in their entirety.

## ADEQUACY OF COUNTY RESPONSES

White argues that even if the ballot images are exempt, he is entitled to an award of attorney fees and a daily penalty under the Public Records Act because the counties' responses were insufficient.

Agency responses refusing inspection of any public record must include a statement of the specific exemption authorizing the withholding of the record and "a brief explanation" of how the exemption applies to the record withheld. RCW 42.56.210(3). In order to satisfy the exemption requirements, the public agency must identity the specified record, cite statutory exemptions, and briefly explain how the exemptions apply to the requested records. PAWS, 125 Wn.2d at 271 n.18. Claims of exemption should contain enough details to (1) enable a requestor to make a threshold decision about whether the exemption was proper and (2) enable judicial review of the decision to withhold. Rental Hous. Ass'n of Puget Sound v. City of Des Moines, 165 Wn.2d 525, 540-41, 199 P.3d 393 (2009); Sanders v. State, 169 Wn.2d 827, 845-49, 240 P.3d 120 (2010).

Skagit County provided White with a 2,111-page exemption log. The log listed each ballot withheld by its serial number and gave, for each, the same brief explanation.

12

RCW's 29A.60.125, 29A.60.110 and WAC 434-261-045 (which are other laws preventing disclosure pursuant to RCW 42.56.070(1)) require ballots to remain in secure storage unless opened by a court or canvassing for a specific authorized purpose.

White contends Skagit County's exemption log was unsatisfactory because it did not explain why the identified provisions for secure ballot storage applied to digital images and metadata. We disagree. The statute requires a "brief explanation," not an explanatory brief. Skagit County's citation to two statutes and a regulation enabled White, and ultimately the trial court, to assess whether or not images of voted ballots are subject to the same provisions for secure storage as the originals.

Island County took a different approach. Instead of an exemption log identifying each ballot by serial number, Island County provided White with a single explanatory letter:

> The records you requested are digital files and associated metadata and properties for ballots in the November 5, 2013 general election. The county received one ballot by fax for this election. Only two voters voted by voting machine. The County received 28 e-mailed ballots for this election as of November 6, 2013. And the number of ballots scanned so far for this election is 28,668.
>
> For each of the scanned ballots a corresponding digital image file exists for each side of each ballot; each ballot for this election is a single page with two sides. There is metadata associated with each digital image file and with the e-mail ballots.
>
> Because the County is not permitted to access the digital files or e-mails for reasons described below, the County cannot list each digital file and e-mail at this time. Similarly, the County is unable to access the specific date each file or e-mail was created. Furthermore, any image files or metadata containing information regarding the sender of the ballot (such as the initials or signature of the voter handwritten on the ballot or metadata associated with

the e-mails) is exempt from disclosure pursuant to RCW 29A.84.420.

>    1. <u>Electronic or digital ballot image files</u>.
>    RCW 29A.40.110, RCW 29A.60.125 and RCW 29A.60.110 require that ballots be sealed in secure storage at all times other than at those specific times and for those specific purposes set forth by statute. See also WAC 434-261-045 and WAC 434-235-040(3). This requirement applies to government employees and officials as well as to others. Consequently, making or releasing copies of ballots without an order from a Superior Court Judge would constitute a violation of these statutes. Pursuant to RCW 29A.04.008, this applies to copies of ballots in any format, including copies of digital ballot images or e-mailed ballots.
>
>    . . . .
>
>    Because a specific statute prohibits their release, these records are being withheld in their entirety under RCW 42.56.070(1), which references documents exempt from disclosure under other statutes. We will not release the ballot images without a court order as described by statute.

White argues that Island County's response violated the act by not providing an exemption log at all. We disagree. It is unnecessary to provide an exemption log repeating the same explanation thousands of times for the same type of document. Island County's succinct and informative letter efficiently fulfilled the "brief explanation" requirement.

White contends both counties' responses should be deemed inadequate and vague because they did not specifically respond to the seven categories of ballot images that he requested. But each county identified the same exemptions for all ballots withheld. It would have been pointless to repeat the same explanation for each of the seven categories within the universe of all ballots.

14

White contends Skagit County should be penalized for failing to respond to his request for "the original metadata and Properties of the electronic or digital files requested." White did not clarify this request when asked. "If the requestor fails to clarify the request, the agency . . . need not respond to it." RCW 42.56.520.

White contends that a request for metadata need not be clarified because the term is well defined in O'Neill v. City of Shoreline, 170 Wn.2d 138, 143, 147, 240 P.3d 1149 (2010). He argues that the County was feigning ignorance about metadata in order to avoid the duty to search for it. In the circumstances of this case, we disagree. It was not unreasonable for the County to ask White to explain how or what part of metadata associated with the electronic or digital files could be a public record, given the County's position that the electronic or digital files themselves were exempt as ballots. As the trial court correctly concluded, White's failure to respond to the request for clarification excused the County from trying to explain more specifically why the "metadata and Properties" were exempt.

Because the counties did not violate the Public Records Act, there is no basis to assess penalties or attorney fees against them.

REQUEST TO CONSIDER ADDITIONAL EVIDENCE

White requests that this court consider a declaration that Pierce County made ballot images public in connection with a past election. Under RAP 9.11, this court may consider evidence that was not before the trial court if, among other things, additional proof of facts is "needed to fairly resolve the issues on

15

review" and the additional evidence would probably change the decision being reviewed. White contends the evidence is necessary to show that "the kinds of records at issue in this case are already made public in Washington, despite the counties' claims to the contrary." The counties oppose the motion. They have submitted a declaration that the information posted by Pierce County in connection with a ranked choice or "instant runoff" election conducted in 2008 consisted only of a series of numbers containing information pulled from the ranked choice voting ballot cards by optical scan voting equipment.

The declaration submitted by White does not prove that Pierce County has ever posted digital images of ballots. But even if that had happened, evidence of the occurrence is not needed to fairly resolve the issue on review. Our decision that copies of electronic and digital image files of ballots are exempt from the Public Records Act is rooted in the constitutional mandate for ballot secrecy and the implementing statutes.

## MOTION TO STRIKE

Granting a motion by the counties, we strike sections B and C of White's answer to the amicus brief filed by Washington Coalition for Open Government. An answer to an amicus brief "should be limited solely to the new matters raised in the brief of amicus curiae." RAP 10.3(f). Rather than answering new matters raised by the Coalition, White responded to the counties' arguments made in their answer to the Coalition's brief.

The counties request fees and costs under RAP 18.9 as a sanction for a frivolous appeal. White's appeal is not frivolous. We deny the request.

No. 72028-7-I/17

Affirmed.

WE CONCUR:

_____

Becker, J.

_____

Cox, J.

_____

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2015 JUL 13 AM 9:59

17