NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2015-0340


DEBORAH SUMNER

v.

NEW HAMPSHIRE SECRETARY OF STATE

Submitted: January 7, 2016
Opinion Issued: March 22, 2016


Deborah Sumner, self-represented party, by brief.


Joseph A. Foster, attorney general (Stephen G. LaBonte, assistant attorney general, on the brief), for the defendant.


HICKS, J. The plaintiff, Deborah Sumner, appeals an order of the Superior Court (Kissinger, J.) upholding the denial, by the defendant, the New Hampshire Secretary of State, of her Right-to-Know Law request, and granting the defendant's motion for summary judgment. Sumner sought to inspect ballots cast in the town of Jaffrey during the 2012 general election. The defendant denied her request, citing RSA 659:95, II (Supp. 2015), which exempts ballots which have been cast from the Right-to-Know Law. On appeal, Sumner argues that RSA 659:95, II, along with RSA 660:16, II (2008) and RSA 669:33, II (2008) (collectively, "the ballot exemption statutes"), violate several

articles of the New Hampshire Constitution.  We hold that the ballot exemption statutes do not violate our State constitution, and, therefore, we affirm.

The record supports the following facts.  Sumner asked to inspect the Jaffrey ballots "[t]o determine why 71 ballots . . . contained over votes, therefore invaliding votes of 71 individuals," and to research "how . . . ballots can be traced to a voter."  When the defendant denied her request, Sumner sued in superior court, requesting, among other things, an order allowing her to review the Jaffrey ballots and a declaratory judgment that the ballot exemption statutes are unconstitutional.  She then moved separately for permission "to review [the] ballots as outlined in her complaint," which the trial court denied.  The defendant moved for summary judgment, which the trial court granted.  This appeal followed.

"When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and inferences properly drawn from them, in the light most favorable to the non-moving party."  Sabinson v. Trustees of Dartmouth College, 160 N.H. 452, 455 (2010).  "If this review does not reveal any genuine issues of material fact, i.e., facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm."  Id.

Sumner first argues that the ballot exemption statutes violate Part I, Articles 1, 2, 7, 8, 10, 11, and 22 of the New Hampshire Constitution.  We read Sumner's brief to focus primarily upon Part I, Article 8, which states that "the public's right of access to governmental proceedings and records shall not be unreasonably restricted."  N.H. CONST. pt. I, art. 8.  According to Sumner, "there is no legitimate privacy reason to exempt ballots from public review," and, thus, the ballot exemption statutes violate her constitutional right of access to governmental records.

"The constitutionality of a statute is a question of law, which we review de novo."  New Hampshire Health Care Assoc. v. Governor, 161 N.H. 378, 385 (2011).  "In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds."  Id. (quotation omitted).  "This means that we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution."  Id. (quotation omitted).  "It also means that when doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality."  Id. (quotation and brackets omitted).  "The party challenging a statute's constitutionality bears the burden of proof."  Id. (quotation omitted).

We have noted that the constitutional "right of access [in Part I, Article 8] . . . must yield to reasonable restrictions."  Hughes v. Speaker, N.H. House of Representatives, 152 N.H. 276, 290 (2005).  "To determine whether restrictions are reasonable, we balance the public's right of access against the competing

constitutional interests in the context of the facts of each case." Id. (quotations and emphasis omitted). "The reasonableness of any restriction on the public's right of access to any governmental proceeding or record must be examined in light of the ability of the public to hold government accountable absent such access." Associated Press v. State of N.H., 153 N.H. 120, 125 (2005).

The State asserts an interest in preserving "the integrity, fairness, and efficiency of" the election process. We have noted that this interest is indisputably compelling. See Opinion of the Justices (Voting Age in Primary Elections II), 158 N.H. 661, 670 (2009). It justifies the State's imposition of "certain eligibility requirements for voters . . . even though they limit a political party's ability to garner support and members," including the establishment of "an age qualification for voters," among other election regulations. Id. at 671.

According to the State, the ballot exemption statutes promote its interest in two ways. First, the statutes prevent members of the public from accessing ballots, altering or hiding those ballots, and then challenging the results of an election. Such behavior would compromise the "strong public policy favoring stability and finality of election results." Buonanno v. DiStefano, 430 A.2d 765, 770 (R.I. 1981). We observe that these risks, in part, supported one state court's determination to hold that copies of cast ballots were statutorily exempt from public records laws. White v. Skagit County, 355 P.3d 1178, 1183 (Wash. Ct. App. 2015) ("Each time ballots are handled, there is the potential to misplace, damage, or lose them."). Sumner's request presents a risk of even greater consequence because she seeks access to original ballots. If original ballots are damaged or lost and election results are subsequently challenged, the State may be unable to verify vote counts.

Second, the ballot exemption statutes protect voter privacy. According to the State, "some ballots, such as those cast using [an] AVS machine, those that are signed by the voter, and certain absentee ballots," may be traceable to voters, and the ballot exemption statutes prevent the public from identifying voters by inspecting those ballots. New Hampshire's elections laws have long preserved voter privacy. See Laws 1808, 49:4 (stating that a ballot with a marking on the back "to distinguish the vote or voter" will not be counted); Laws 1891, 49:23, :29 (penalizing voters for "occupy[ing] a marking shelf or compartment already occupied by another" voter, placing "distinguishing mark[s]" on ballots, or showing their ballots to others). Current election laws reflect this policy. See, e.g., RSA 659:23 (Supp. 2015) (requiring that ballots be handled "so that the marks on [them] cannot be seen"); RSA 659:35, II (Supp. 2015) (preventing voters from placing distinguishing marks on ballots); RSA 659:95-:100 (2008 & Supp. 2015) (mandating the process for sealing and certifying ballots after they are cast).

Sumner's principal reason for requesting access to the Jaffrey ballots is to ensure that the town accurately counted its residents' votes. Although we

recognize the legitimacy of this interest, we note that New Hampshire law enables public oversight of the vote counting process in ways that, unlike public ballot inspection, do not increase the risk of lost or damaged ballots, fraudulent election challenges, or infringement upon voter privacy. For instance, RSA 659:63 (2008) requires that vote counting be conducted in public, so that the public may observe the counting process as it occurs. Further, RSA 660:1 (Supp. 2015) and RSA 660:5 (2008) permit candidates to request recounts during which they or appointed representatives may inspect cast ballots to determine whether the ballots had been accurately counted.

Moreover, Sumner provides little support for the proposition that the constitutional right of access includes a right to inspect cast ballots. She cites two cases that were decided under the public records laws of other states. See Price v. Town of Fairlee, 26 A.3d 26, 28 (Vt. 2011) (interpreting the Vermont Access to Public Records Act to allow access to ballots); Marks v. Koch, 284 P.3d 118, 119, 124 (Colo. App. 2011) (interpreting the Colorado Open Records Act to allow access to ballots). Given that our statutes exempt cast ballots from our Right-to-Know Law, we find those cases unpersuasive. We also note that other states have interpreted their public records laws to exempt access to cast ballots. See, e.g., White, 355 P.3d at 1184; In re Decision v. State Bd. of Elections, 570 S.E.2d 897, 898 (N.C. Ct. App. 2002).

Given that New Hampshire's ballot exemption statutes promote the State's compelling interest in the integrity, fairness, and efficiency of elections, and that state law incorporates public oversight into the vote counting process, we find that, on balance, the State's interest outweighs the public's interest in access. We therefore hold that the ballot exemption statutes are reasonable restrictions under Part I, Article 8.

Sumner argues that the ballot exemption statutes facially violate other articles of the New Hampshire Constitution, including Part I, Article 11, which guarantees the right to vote, and Part I, Article 22, which protects freedom of speech. N.H. CONST. pt. 1, arts. 11, 22. However, Sumner provides no authority suggesting that the right to vote includes the right to inspect ballots. Sumner also fails to show how prohibiting access to already-cast ballots infringes freedom of speech. She cites Rideout v. Gardner, No. 14-cv-489-PB, 2015 WL 4743731, at *1 (D.N.H. Aug. 11, 2015), in which the federal district court ruled that a New Hampshire statute that made "it unlawful for voters to take and disclose digital or photographic copies of their completed ballots" was an invalid "content-based restriction on speech that [could not] survive strict scrutiny." However, Rideout concerned acts of expression by individual voters — their disclosure of photographs of their ballots. Id. Here, Sumner does not explain how her inspection of ballots cast by others involves a similarly expressive act.

4

We reject, as underdeveloped, Sumner's remaining assertions that the ballot exemption statutes violate the New Hampshire Constitution. See Keenan v. Fearon, 130 N.H. 494, 499 (1988) ("[O]ff-hand invocations of the State Constitution [that] are supported neither by argument nor by authority . . . warrant[] no extended consideration.").

Sumner next argues that the trial court erred in rejecting, as a non-justiciable political question, her claim that the process by which the legislature enacted the ballot exemption statutes violated the New Hampshire Constitution. According to Sumner: the ballot exemption provisions were added to a bill without legislators knowing about them or having the opportunity to request that the attorney general verify the provisions' constitutionality; the provisions were not germane to the bill in which they were passed; the attorney general failed to encourage the legislature to repeal the ballot exemption statutes after they were enacted; and there were other alleged violations of the legislature's procedural rules.

"A controversy is nonjusticiable—i.e., involves a political question—where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it." Hughes, 152 N.H. at 283 (quotation omitted). "The authority to adopt procedural rules for passing legislation is demonstrably committed to the legislative branch by Part II, Articles 22 and 37 of the State Constitution." Baines v. N.H. Senate President, 152 N.H. 124, 130 (2005). "The legislature, alone, has complete control and discretion whether it shall observe, enforce, waive, suspend, or disregard its own rules of procedure." Hughes, 152 N.H. at 284 (quotation omitted). Because Sumner's claim focuses upon alleged violations of the legislature's procedural rules, a ruling on that claim would have interfered in an area in which the constitution gives the legislature "complete control and discretion." Id. (quotation omitted). We, therefore, hold that the trial court did not err in ruling that Sumner's claim was non-justiciable.

Sumner also challenges the trial court's denial of her motion for a court order allowing her to review the Jaffrey ballots. "Decisions concerning pretrial discovery are within the sound discretion of the trial judge." N.H. Ball Bearings v. Jackson, 158 N.H. 421, 429 (2009). "We review a trial court's rulings on the management of discovery under an unsustainable exercise of discretion standard." Id. "To establish that the trial court erred, [Sumner] must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of [her] case." Id. Because the request for the court order merely replicated Sumner's initial request, in her complaint, to review the Jaffrey ballots, we conclude that the trial court's denial of the duplicate request was neither untenable nor unreasonable.

5

Finally, Sumner argues that genuine issues of material fact precluded the trial court from granting the defendant's motion for summary judgment. However, the disputed facts that she mentions in her brief do not affect the outcome of our decision, and are, therefore, immaterial. Having determined that the ballot exemption statutes — RSA 659:95, II, RSA 660:16, II, and RSA 669:33, II — do not violate the New Hampshire Constitution, we hold that the trial court did not err by granting the defendant's motion for summary judgment.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.