NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2019-0500

CONTOOCOOK VALLEY SCHOOL DISTRICT & a.

v.

THE STATE OF NEW HAMPSHIRE & a.

Argued: September 24, 2020
Opinion Issued: March 23, 2021

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Michael J. Tierney and Elizabeth E. Ewing on the brief, and Mr. Tierney orally), for the plaintiffs.

Gordon J. MacDonald, attorney general (Daniel E. Will, solicitor general, Anthony J. Galdieri, senior assistant attorney general, Lawrence M. Edelman, assistant attorney general, and Samuel R.V. Garland, attorney, on the brief, and Mr. Will orally), for the defendants.

John E. Tobin, Jr., of Concord, on the brief, and Laflamme Law, PLLC, of Concord (Natalie J. Laflamme on the brief), for Berlin School District, Derry School District, Hopkinton School District, Mascoma Valley Regional School District, Pittsfield School District, Newport School District, Merrimack Valley

Regional School District, Haverhill School District, Winnisquam Regional School District, White Mountains Regional School District, Claremont School District, Concord School District, Warren School District, Piermont School District, Bath School District, Manchester School District, Governor Wentworth Regional School District, Keene School District, Chesterfield School District, Harrisville School District, Marlborough School District, Marlow School District, Nelson School District, Westmoreland School District, Nashua School District, Fall Mountain Regional School District, and the New Hampshire School Boards Association, as amici curiae.

American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief), as amicus curiae.

Gregory M. Sorg, of Franconia, by brief, for Senator Harold French, Senator Robert Giuda, Representative Gregory Hill, Representative Carol McGuire, and Representative Andrew Renzullo, as amici curiae.

DONOVAN, J. The defendants, the State of New Hampshire, the New Hampshire Department of Education (DOE), Governor Christopher T. Sununu, and the Commissioner of DOE, Frank Edelblut (collectively, the State), appeal a decision of the Superior Court (Ruoff, J.) denying, in part, the State's motion to dismiss and denying its cross-motion for summary judgment, granting the plaintiffs' motion for summary judgment on grounds that the amount of per-pupil base adequacy aid set forth in RSA 198:40-a, II(a) (Supp. 2020) to fund an adequate education is unconstitutional as applied to the plaintiff school districts, and awarding the plaintiffs attorney's fees. The plaintiffs, Contoocook Valley School District, Myron Steere, III, Richard Cahoon, Richard Dunning, Winchester School District, Mascenic Regional School District, and Monadnock Regional School District, cross-appeal the trial court's failure to find RSA 198:40-a, II(a) facially unconstitutional; its determinations regarding the sufficiency of the State's funding of transportation, teacher benefits, facilities operations and maintenance, and certain services; its failure to find that the State's system of funding education violates Part II, Article 5 of the State Constitution; and its denial of their request for injunctive relief; and its dismissal of their claims against the Governor and the Commissioner.

We affirm the trial court's dismissal of the Governor and the Commissioner in their individual capacities, and its denials of the State's

2

motion to dismiss for failure to state a claim, the State's cross-motion for summary judgment, and the plaintiffs' request for injunctive relief. However, we reverse that portion of the trial court's order granting the plaintiffs' motion for summary judgment and awarding attorney's fees, and remand for further proceedings consistent with this decision.

At the outset, we note that the issue before us is a narrow one — whether the trial court erred in resolving the merits of the plaintiffs' claims on summary judgment without significant discovery. The State does not contest the underlying law applicable to the issues in this case. Under our education funding jurisprudence, Part II, Article 83 of the State Constitution "imposes a duty on the State to provide a constitutionally adequate education to every educable child in the public schools in New Hampshire and to guarantee adequate funding." Claremont School Dist. v. Governor, 138 N.H. 183, 184 (1993). To comply with that duty the State must "define an adequate education, determine the cost, fund it with constitutional taxes, and ensure its delivery through accountability." Londonderry Sch. Dist. v. State, 154 N.H. 153, 155-56 (2006) (quotation omitted). The plaintiffs do not challenge the constitutionality of the definition of an adequate education set forth in RSA 193-E:2-a (Supp. 2020). Rather, the plaintiffs' grievance is that the State is not fulfilling its constitutional duty because local school districts require substantially more funding than the State currently provides under RSA 198:40-a, II(a) in order for them to deliver the opportunity for a constitutionally adequate education, as defined in RSA 193-E:2-a, to the public school children in New Hampshire.

I. Procedural Background

In Londonderry School District, the State appealed a trial court ruling that the State's education funding system violated Part II, Article 5 of the State Constitution and that the State had failed to fulfill its duty, as required by Part II, Article 83 of the New Hampshire Constitution, to define a constitutionally adequate education, to determine its cost, and to satisfy the requirement of accountability. Londonderry Sch. Dist., 154 N.H. at 154-55; see Claremont School Dist. v. Governor (Accountability), 147 N.H. 499, 505 (2002). We determined that, standing alone, the legislature's definition of an adequate education in RSA 193-E:2 did not fulfill the State's duty to define the substantive content of a constitutionally adequate education in such a manner "that the citizens of this state can know what the parameters of that educational program are." Londonderry Sch. Dist., 154 N.H. at 161. Because the definition of a constitutionally adequate education was essential to all other issues, including its cost, we stayed the portion of the trial court's decision that the legislature had failed to determine the cost of a constitutionally adequate education. Id. at 162.

Following our decision in <u>Londonderry School District</u>, the legislature enacted RSA 193-E:2-a, setting forth the substantive educational program to deliver the opportunity for an adequate education for kindergarten through twelfth grade. <u>See</u> RSA 193-E:2-a, I, II. The statute defines the "substantive content of an adequate education" as including instruction in:

(a) English/language arts and reading.
(b) Mathematics.
(c) Science.
(d) Social Studies.
(e) Arts education.
(f) World languages.
(g) Health education . . . .
(h) Physical education.
(i) Engineering and technologies.
(j) Computer science and digital literacy.

RSA 193-E:2-a, I (bolding and capitalization omitted). The "specific criteria and substantive educational program that deliver the opportunity for an adequate education shall be defined as" the "minimum standards for public school approval for the areas identified in paragraph I." RSA 193-E:2-a, I, IV(a). Those minimum standards "shall clearly set forth the opportunities to acquire the communication, analytical and research skills and competencies, as well as the substantive knowledge expected to be possessed by students at the various grade levels," RSA 193-E:2-a, II, and "shall constitute the opportunity for the delivery of an adequate education," RSA 193-E:2-a, IV(a). The New Hampshire Board of Education and DOE are required to "refin[e] the minimum standards for public school approval for each area of education identified in paragraph I," RSA 193-E:2-a, V(a); however, the enumerated list set forth in paragraph I cannot be amended without the legislature's approval. <u>See</u> RSA 193-E:2-a, IV(a)-(c).

The legislature also established a Joint Legislative Oversight Committee on Costing an Adequate Education (Joint Committee) and charged it with studying "the analytical models and formulae for determining the cost of an adequate education . . . for children throughout the state." Laws 2007, 270:2. In February 2008, the Joint Committee issued its Final Report and Findings (Final Report), which incorporated a breakdown of costs it had considered (the 2008 Spreadsheet).

Thereafter, the legislature enacted RSA 198:40-a, setting forth the annual per-pupil cost of providing the opportunity for an adequate education as defined in RSA 193-E:2-a. The legislature determined that cost, based on

4

average daily membership in attendance (ADMA), see RSA 189:1-d, III (2009); RSA 198:38, I(a) (Supp. 2020), to be:

> (a) A cost of $3,561.27 per pupil in the ADMA, plus differentiated aid as follows:
> (b) An additional $1,780.63 for each pupil in the ADMA who is eligible for a free or reduced price meal; plus
> (c) An additional $697.77 for each pupil in the ADMA who is an English language learner; plus
> (d) An additional $1,915.86 for each pupil in the ADMA who is receiving special education services; plus
> (e) An additional $697.77 for each third grade pupil in the ADMA with a score below the proficient level on the reading component of the state assessment . . . .

RSA 198:40-a, II. The statute provides that "[t]he sum total calculated under paragraph II shall be the cost of an adequate education." RSA 198:40-a, III. The rates set forth in the statute are adjusted each biennium to reflect changes in the federal Consumer Price Index. RSA 198:40-d (Supp. 2020). At issue in this case is the cost amount set forth in RSA 198:40-a, II(a). According to the plaintiffs, that amount was $3,636.06 per pupil for the 2019 fiscal year.

In March 2019, the plaintiffs brought a petition for declaratory judgment and injunctive relief asserting facial and as-applied constitutional challenges to RSA 198:40-a, II(a). The plaintiffs alleged that the amount of base adequacy aid fails to sufficiently fund an adequate education as guaranteed by Part II, Article 83 of the State Constitution. The plaintiffs specifically challenged five areas of the cost determinations set forth in the Joint Committee's Final Report and 2008 Spreadsheet: (1) transportation; (2) teacher-student ratios; (3) teacher and staff benefits; (4) the failure to include several State-required services including nurse services, superintendent services, and food services; and (5) facilities operations and maintenance. The plaintiffs alleged that, because the amount of base adequacy aid in RSA 198:40-a, II(a) is insufficient to cover those costs, the school districts are forced to increase their local taxes in order to fund a constitutionally adequate education in violation of Part II, Article 83. In addition, the plaintiffs challenged the Statewide Education Property Tax (SWEPT). See RSA 76:3 (2012). They asserted that the lack of adequate funding via the SWEPT requires property-poor school districts, but not property-wealthy districts, to increase their property taxes, thereby violating both Part II, Article 83 and Part II, Article 5 of the State Constitution.

Following a hearing, the trial court denied the plaintiffs' requests for a preliminary injunction enjoining the alleged unconstitutional underfunding of the school districts and a court order requiring the State to pay approximately $20 million in base adequacy aid to them. Noting that both parties sought

expedited treatment of the case, the trial court set expedited deadlines for dispositive motions and responsive pleadings, and scheduled a final hearing on the merits for the first week of June. In doing so, the trial court disagreed with the State that significant discovery might be required, characterizing "the factual and discovery issues, if any, [as] very discre[te] and well defined." Thereafter, the State moved to dismiss the plaintiffs' petition for failure to state a claim, the plaintiffs filed a second amended petition and moved for summary judgment, and the State cross-moved for summary judgment.

After receiving the parties' responsive pleadings, the trial court canceled the merits hearing, and on June 5 it issued an omnibus order addressing all of the parties' motions. The court partially denied the State's motion to dismiss, determining that the plaintiffs' second amended petition sufficiently alleged a constitutional violation. The court also denied the State's cross-motion for summary judgment, rejecting the State's argument that the DOE data relied upon by the plaintiffs did not constitute "reliable, competent evidence" of the costs necessarily incurred to deliver an adequate education, and determining that it could "wholly adjudicate the constitutional questions raised in the Second Amended Petition even without the DOE data."

Relying on the costing determinations and rationale reflected in the Joint Committee's Final Report and 2008 Spreadsheet, the court granted the plaintiffs' motion for summary judgment on the grounds that RSA 198:40-a, II(a) is unconstitutional as applied to them, because it utilizes insufficient teacher-student ratios and "includes transportation costs intentionally insufficient to provide transportation to high school students." The court denied the plaintiffs' request for injunctive relief because it determined that whether the SWEPT had an unconstitutional effect was not ripe for adjudication. The court likewise denied their request for injunctive relief in the form of ordering the Governor and the Commissioner to draw funds from the education trust fund because it found that the plaintiffs did "not have valid grounds to seek the amount that they request." The trial court granted the plaintiffs' request for attorney's fees under the "substantial benefit theory." Subsequently, the court denied the parties' motions for reconsideration, modifying its earlier order in part. This appeal followed.

## II. Analysis

On appeal, the State asserts that the trial court "committed several manifest errors of law" which require us to reverse its denial of the State's motion to dismiss and/or motion for summary judgment. These errors include: (1) conducting "an exacting audit of RSA 198:40-a's legislative history," rather than focusing on "the constitutionality of the final figure adopted by the legislature"; and (2) "implying that the services the plaintiffs claim are constitutionally required actually fall within the statutory definition

6

of an adequate education."  In their cross-appeal, the plaintiffs argue that the trial court erred by: (1) rejecting their facial challenge to RSA 198:40-a, II(a); (2) failing to find that the State is underfunding the actual costs of transportation for all students, teacher salaries, and facilities operations and maintenance; (3) failing to find that the State provides no funding for nurse, superintendent, and food services; (4) dismissing their claims against the Governor and the Commissioner individually; (5) denying their request for injunctive relief; and (6) declining to reach their claims under Part II, Article 5 of the State Constitution.

The constitutionality of a statute is a question of law, which we review de novo.  Sumner v. New Hampshire Secretary of State, 168 N.H. 667, 669 (2016).  In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds.  Id.  This presumption requires that we will hold a statute to be constitutional unless a clear and substantial conflict exists between it and the constitution.  Id.  When doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality.  Id.  The party challenging a statute's constitutionality bears the burden of proof.  Id.

### A. Motion to Dismiss

The State asserts that because "the plaintiffs' pleadings contained only unadorned legal conclusions," the trial court erred by denying its motion to dismiss.  According to the State, in concluding that the plaintiffs had pleaded an actual deprivation of a fundamental right, the trial court erroneously relied solely on the allegation in the petition that the State "does not currently provide sufficient funds for each and every school district to provide a constitutionally adequate education."  The State argues that that allegation is simply "a legal conclusion as to the ultimate issue" and that the more specific allegations in the petition that are based upon the Joint Committee's Final Report and 2008 Spreadsheet are not sufficient to state a claim because they "are merely a series of statements that the State underfunds various services that the plaintiffs believe fall within the definition of an adequate education."  The State contends that, "[b]ecause the proper analytical framework focuses on the per-pupil cost as a whole, and not the underlying methodology," the plaintiffs' allegations, "even when assumed true, do not 'buttress' the conclusory assertion" relied upon by the trial court.

In reviewing a trial court's ruling on a motion to dismiss, we consider whether the allegations in the pleadings are reasonably susceptible of a construction that would permit recovery.  Weare Bible Baptist Church v. Fuller, 172 N.H. 721, 725 (2019).  We assume the pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiff.  Id.  We need not, however, assume the truth of statements in the pleadings that are

merely conclusions of law. <u>Lamb v. Shaker Reg'l Sch. Dist.</u>, 168 N.H. 47, 49 (2015). We then engage in a threshold inquiry that tests the facts in the petition against the applicable law. <u>Fuller</u>, 172 N.H. at 725. When the facts alleged by the plaintiff are reasonably susceptible of a construction that would permit recovery, we will uphold the denial of a motion to dismiss. <u>Id</u>.

As discussed below in Section B, we agree with the State that the costing determinations set forth in the Joint Committee's Final Report and 2008 Spreadsheet are irrelevant as to whether the amount of funding set forth in RSA 198:40-a, II(a) is constitutional. However, in the context of the State's motion to dismiss, even setting aside the allegations in the amended petition that are based upon the Final Report, we conclude that the remaining allegations "are reasonably susceptible of a construction that would permit recovery." <u>Fuller</u>, 172 N.H. at 725. The amended petition alleges that: "[t]he state average [expenditure for] elementary and secondary education per pupil was $18,901.32 for the 2017-2018 school year"; the State Constitution "imposes solely upon the State the obligation to provide sufficient funds for each school district" (quotation omitted); the State "does not currently provide sufficient funds for each and every school district to provide a constitutionally adequate education"; the plaintiffs "receive base adequacy aid at a rate of $3,636.06 per pupil and need to raise additional funds via local taxation in order to provide a constitutionally adequate education"; "[n]o school district can provide a constitutionally adequate education on only $3,636.06 per pupil"; and "[n]o school district can provide the requirements of RSA 193-E:2-a on only $3,636.06 per pupil."

Assuming, as we must, the allegations set forth in the plaintiffs' pleadings to be true and construing all reasonable inferences in the light most favorable to the plaintiffs, at its core the amended petition alleges that the State is failing to fulfill its constitutional obligation to fully fund an adequate education. As the trial court observed, the plaintiffs "have consistently pled throughout that . . . the State has failed to meet its obligation to fully fund an adequate education as required by Part II, Article 83, of the New Hampshire Constitution, and that a constitutionally adequate education cannot be provided . . . without more base adequacy funding than [is] provided by the State pursuant to" RSA 198:40-a, II(a). (Quotations, brackets, and record citations omitted.) Thus, we affirm the trial court's denial of the State's motion to dismiss the amended petition for failure to state a claim.

B. Summary Judgment

The parties contend that the trial court erred in ruling on their respective motions for summary judgment. In considering the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the non-moving party and, if no genuine issue of material fact exists, we determine whether the moving party is

entitled to judgment as a matter of law. JMJ Properties, LLC v. Town of Auburn, 168 N.H. 127, 129 (2015). If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. at 129-30. An issue of fact is material if it affects the outcome of the litigation. Horse Pond Fish & Game Club v. Cormier, 133 N.H. 648, 653 (1990).

The State argues that the trial court erred in granting the plaintiffs' motion for summary judgment. According to the State, the trial court erroneously determined that the plaintiffs proved a deprivation of the right to a State-funded adequate education by conducting "an exacting audit of RSA 198:40-a's legislative history," rather than focusing "on the constitutionality of the final figure adopted by the legislature without concern for the components of that figure or the rationale underpinning it." In doing so, the State asserts, the trial court "ignored this Court's clear directive not to consider legislative history absent ambiguous statutory text," and thereby "improperly required the legislature to justify its costing decision without first requiring the plaintiffs to prove the deprivation of a fundamental right." Because "the methodology behind the per-pupil cost set forth in [the statute] is not relevant to the constitutionality of that cost," the State contends that the trial court applied an incorrect analytical framework. Under the correct analytical framework, the State argues, the trial court should have determined whether "the per-pupil cost set forth in RSA 198:40-a is sufficient to fund an adequate education, as defined in RSA 193-E:2-a." The plaintiffs counter that "[t]he Legislature itself specifically incorporated the justifications of the Joint Committee into the funding bill as the justifications for RSA 198:40-a," citing Laws 2008, 173:1, and thus, they assert, the Final Report has been incorporated by reference into the statute.

Whether RSA 198:40-a incorporates the Final Report by reference into the law raises an issue of statutory construction. The interpretation of a statute is a question of law, which we review de novo. Forster v. Town of Henniker, 167 N.H. 745, 749 (2015). In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. Id. at 749-50. In construing a statute, we will neither consider what the legislature might have said, nor add words that it did not see fit to include. Id. at 750.

The 2008 session law sets forth the legislature's statement of purpose in enacting RSA 198:40-a. Laws 2008, 173:1. In pertinent part, the statement of purpose provides:

> I. The general court finds that the cost of the opportunity for an adequate education for public school students, as established in this act, is based upon the definition of the opportunity for an

adequate education enacted in the 2007 Laws of New Hampshire, chapter 270. The methodologies for costing, determination of resources, and elements of cost included in this act are intended to and do fulfill the state's duty under the Encouragement of Literature clause of the New Hampshire constitution to deliver the opportunity for an adequate education.

II. The individual components of the cost were selected on the basis of their effectiveness in delivering educational opportunity and after extensive review, debate and discussion by the joint legislative oversight committee on costing an adequate education and the general court. The legislative process consisted of obtaining information from professional educators, government officials, education policy and finance experts, and the public on the establishment of the cost of an adequate education.

III. The joint legislative oversight committee on costing issued detailed findings and recommendations on the composition of the cost of an adequate education and how the funds for an adequate education should be allocated and accounted for in order to ensure that the educational needs of all public school students are met. These findings and recommendations were submitted to the general court and are an integral basis of the costing determinations reflected in this act.

IV. The cost of the opportunity for an adequate education consists of several elements. All such elements must be provided in order to ensure the delivery of the state's constitutional duty. . . . The universal cost represents the costs attributable only to the subset of education that is included in the definition in RSA 193-E:2-a.

Laws 2008, 173:1.

The legislature's intent to incorporate by reference must be clear. See, e.g., State v. Fitanides, 139 N.H. 425, 427-28 (1995) (noting that New Hampshire statute, which provided, in pertinent part, that "'Class B special fireworks' means class B special fireworks as defined in 49 CFR section 173.88(d), packaged and unpackaged," incorporated federal regulation by reference (quotation omitted)); Shangri-La, Inc. v. State, 113 N.H. 440, 442 (1973) (where a statute provided that "Gross Business Profits" means "in the case of a corporation which elects treatment as a small business corporation under the United States Internal Revenue Code (1954) as amended, the amount shown as 'taxable income' on its United States small business corporation income tax return," such language "imports a legislative intent to incorporate by reference the federal income tax method of determining taxable income" (quotations omitted)).

The statement of purpose in the 2008 session law provides that, in reaching its determination of the costs of the opportunity for an adequate education, the legislature considered information from numerous sources including "professional educators, government officials, education policy and finance experts, and the public."  Laws 2008, 173:1.  In addition, the "findings and recommendations" of the joint oversight committee "on the composition of the cost of an adequate education and how the funds . . . should be allocated" were considered and constituted "an integral basis of the costing determinations reflected in" the act.  Id.

This language does not identify which findings and recommendations the legislature adopted, nor does it state that the legislature adopted the underlying rationale behind those findings and recommendations.  See Right to Life v. Dept. of Health & Human Serv's, 778 F.3d 43, 55 (1st Cir. 2015) (explaining that "[m]ere reliance on a document's conclusions . . . does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference" (quotations omitted)).  Moreover, the Final Report is not expressly identified in the session law, see Fitanides, 139 N.H. at 428.  Accordingly, we determine that the general language set forth in the 2008 session law falls short of expressing clear legislative intent to specifically incorporate by reference the Joint Committee's Final Report, including its 2008 Spreadsheet, as part of RSA 198:40-a.  Thus, the Final Report constitutes legislative history, not substantive law.

We do not consider legislative history to construe a statute which is clear on its face.  See Anderson v. Estate of Wood, 171 N.H. 524, 528 (2018) (explaining that we will not examine legislative history unless we find statutory language to be ambiguous); see also State Employees' Ass'n of New Hampshire, Inc. v. State, 127 N.H. 565, 568 (1986) (explaining that "[e]ven if the plaintiffs could show that some legislators had an intent that ran counter to the statutory language actually enacted, this would not create the uncertainty of statutory meaning that is necessary to justify an inquiry beyond the words of the statute itself").  As the trial court observed, RSA 198:40-a, II(a) is "unambiguous as to the amount provided."  Thus, the legislature's underlying rationale for reaching the cost set forth in the statute, including the methodology contained in the Joint Committee's Final Report and 2008 Spreadsheet, is irrelevant to determining whether the amount is sufficient to cover the cost of delivering an adequate education as defined by the legislature in RSA 193-E:2-a.  See State v. Chrisicos, 158 N.H. 82, 88 (2008) (explaining that "because we never require a legislature to articulate its reasons for enacting a statute," such reasons are "irrelevant for constitutional purposes" (quotation omitted)).

11

In reaching its determination that RSA 198:40-a, II(a) is unconstitutional as applied to the plaintiffs, the trial court reasoned that "the most appropriate way to determine whether the [plaintiffs] have alleged an actual deprivation is to analyze each 'flaw' that the [plaintiffs] have highlighted in the 2008 Spreadsheet" regarding the costing determinations and rationale employed by the Joint Committee. In doing so, the trial court found, among other things, that the Joint Committee's calculation of base adequacy aid was based on faulty teacher-student ratios and thus concluded that "RSA 198:40-a, II(a) . . . results in an actual deprivation of the fundamental right to a State-funded adequate education," that the State "lack[ed] a compelling government interest to support the Joint Committee's teacher-student ratio that was used in calculating the base adequacy aid in RSA 198:40-a, II(a)," and that "[t]he faulty ratio alone is sufficient to find that RSA 198:40-a, II(a) is unconstitutional."

However, RSA 198:40-a and RSA 193-E:2-a set forth the applicable law, not the Final Report and the 2008 Spreadsheet. Thus, the methodology employed by the legislature in determining the cost of an adequate education in RSA 198:40-a is irrelevant to the plaintiffs' constitutional challenge. Because the Final Report and 2008 Spreadsheet formed the basis for the court's analysis and conclusions, we hold that the trial court erred as a matter of law in invalidating RSA 198:40-a, II(a). Accordingly, we vacate the trial court's ruling that RSA 198:40-a, II(a) is unconstitutional as applied to the plaintiffs and reverse that portion of its order granting the plaintiffs' motion for summary judgment.

Furthermore, summary judgment is warranted only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See JMJ Properties, 168 N.H. at 129-30. After noting that the plaintiffs do not challenge the constitutionality of the definition of an adequate education set forth in RSA 193-E:2-a, the trial court correctly observed that it is "impossible" to address the plaintiffs' costing argument without first determining what is required to deliver an adequate education as defined in the statute. Although determining the components of an adequate education and their costs presents a mixed question of law and fact, as the parties' briefs make clear, the underlying facts are vigorously disputed, thereby precluding entry of summary judgment for either party.

For example, the State argues that "RSA 193-E:2-a mentions none of the services on which the plaintiffs based their funding challenge, nor does any applicable administrative rule," and thus such services are "ancillary to the substantive educational program" the State is required to fund. The plaintiffs contend, on the other hand, that "[n]urse, superintendent, and food services," among other things, "are required by the Board of Education regulations, which are incorporated into the definition of a constitutionally adequate education by virtue of RSA 193-E:2-a, IV(a)." Thus, according to the plaintiffs, these services "are part of a constitutionally adequate education." We agree

12

that resolving this fact-driven dispute is a prerequisite for determining whether the amount of funding set forth in RSA 198:40-a, II(a) is sufficient to deliver the opportunity for an adequate education.  At this stage of the litigation, this dispute is not suited to resolution by summary judgment.[1]  See C.J.S. Constitutional Law § 243 (2015) (explaining that in "an as applied" challenge to the constitutionality of a statute the plaintiff has the burden of demonstrating that the statute has in fact been, or is sufficiently likely to be, unconstitutionally applied to him or her and the trial judge and reviewing court have the particular facts and circumstances of the case needed to determine whether the statute has been, or is likely to be, applied in an unconstitutional manner).

## C. Remaining Arguments

In light of our holding, we reverse the trial court's determination that the plaintiffs are entitled to their attorney's fees.  In addition, we need not address the plaintiffs' arguments regarding the trial court's failure to find that the State's system of funding education violates Part II, Article 5, or that the court erred in denying their request for injunctive relief.  Further, although the plaintiffs assert that the trial court erred in failing to find RSA 198:40-a, II(a) unconstitutional on its face, we do not read the court's order as reaching the merits of that issue.  Rather, as a threshold matter, the trial court determined the level of scrutiny to apply in analyzing the plaintiffs' motion for summary judgment.  In doing do, the court framed the question before it as "whether the amount of base adequacy aid as provided in RSA 198:40-a, II(a) results in an actual deprivation of the fundamental right to a State-funded adequate education."  Noting that the plaintiffs alleged both facial and as-applied challenges to RSA 198:40-a, and because the statute "does not deprive the [plaintiffs] of a fundamental right on its face," the trial court analyzed the statute as applied to the plaintiff school districts to determine whether an actual deprivation had occurred.

Finally, we briefly address the plaintiffs' argument that the trial court erred by granting the State's request to dismiss the claims against the Governor and the Commissioner in their individual capacities.  The State correctly notes that the relief sought by the plaintiffs included ordering the Governor and/or the Commissioner to "ensure the faithful execution of the laws," to "draw a warrant from the education trust fund," and to comply with

---

[1] In its motion for summary judgment, the State took issue with the source of the information the plaintiffs relied upon in arguing that the State has failed to cost and fund the opportunity for an adequate education.  According to the State, DOE data cannot be relied upon for such an analysis because it does not distinguish between the costs necessary to deliver an adequate education and costs that fall above or outside what is constitutionally mandated.  The weight and reliability of the data, and precisely which costs are constitutionally mandated, are issues that the trial court must address in the first instance.

the statutory requirements regarding the distribution of adequate education grants. (Quotations omitted.) Given that the plaintiffs' theory for relief is essentially that neither the Governor nor the Commissioner "have yet complied with the New Hampshire Constitution by ensuring education is cherished and fully funded," we agree with the trial court that if either or both individuals were ordered to act according to the law, "they would be acting in their official capacities." Accordingly, we affirm the trial court's ruling.

Affirmed in part; reversed in part; and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred; BROWN, J., retired superior court justice, specially assigned under RSA 490:3, concurred.