153 A.2d 587 (1959)
Veronica B. PIEKARSKI, single woman, Walter S. Sosik, Carmella M. Sosik, Emory L. Bauer and Margery Hill Bauer, on behalf of themselves and others similarly situated, Plaintiffs Below, Appellants,
v.
J. Gordon SMITH, Benjamin F. Shaw, II, Benjamin Ableman, Thurman G. Adams, J. Draper Brown, Dallas D. Culver, Samuel J. Fox, Frank R. Grier, Edward Kelly, William P. Richardson, Hugh R. Sharp, Jr. and Robert D. Thompson, constituting the State Highway Department of the State of Delaware, and Richard A. Haber, Chief Engineer, and the Mayor and Council of Wilmington, a municipal corporation of the State of Delaware, Appellees.
Supreme Court of Delaware.
July 28, 1959.
Thomas Herlihy, Jr. and Hiram W. Warder, Wilmington, for appellants.
S. Samuel Arsht and Harvey S. Kronfeld, of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellees State Highway Department and the Chief Engineer.
SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.
*589 SOUTHERLAND, Chief Justice.
Plaintiffs are citizens and taxpayers residing in the City of Wilmington. They seek to enjoin the State Highway Department from proceeding with the construction of a controlled-access facility through the City. The facility will be a Federal Aid Interstate Highway. The case was heard by the Vice Chancellor on pleadings and affidavits. He rejected all of the plaintiffs' contentions and granted the Department's motion for summary judgment. Plaintiffs appeal.
The pertinent facts are these:
On February 13, 1957, the Department approved a certain route through the City for the construction of the contemplated expressway. This route is referred to as the Bancroft Parkway route. In March it gave public notice of a hearing on the matter, as required by the Federal Aid Highway Act of 1956, 23 U.S.C.A. § 101 et seq. The hearing was held on April 10 and adjourned hearings were held on April 13 and on May 6 and 7.
On April 15 attorneys for certain objecting taxpayers filed a petition with the Department requesting a hearing before it to present objections to the proposed highway.
On June 12 the Department approved a recommendation of the Chief Engineer that four tentative routes for the expressway through western Wilmington be presented to City Council, with a request that the Council approve and recommend the route that in its opinion would best solve the City's traffic problem.
On June 13 the Department addressed a a letter to Council. The letter set forth an analysis of the results of the public hearings on the west Wilmington expressway, and enumerated four practicable routes. The first listed was the Bancroft Parkway line, recommended by the Department. The fourth was a "modified old route A or the Adams-Jackson Street line."
On the same day the City Council met and referred the Department's letter to "Council as a committee of the whole". Numerous persons were present, and one of the attorneys for the plaintiffs in this suit spoke against the expressway.
On June 20 the matter came before the Council again. The privilege of the floor was granted to the Deputy Chief Engineer of the Department and to opponents of the expressway, and interested parties were fully heard. The Council by a vote of seven to five approved the modified Adams-Jackson Street route.
On June 27 the Council approved an agreement between the Department and the City providing for the construction of the expressway by the Department without cost to the City and evidencing the City's consent thereto. On the following day the agreement was executed.
In July the Department gave public notice of a public hearing on September 9 upon the proposed Adams-Jackson Street route. On September 23 a postponed hearing was held.
All of these proceedings related to a controversial subject of great public interest and received wide publicity in the Wilmington newspapers.
On April 8, 1958, the United States Bureau of Public Roads approved the Adams-Jackson Street route, and on June 26, 1958, this suit was filed.
Plaintiffs assail on several grounds the validity of the proceedings above outlined. We divide their contentions into three groups.

1. The Consent of the City.

It is contended that the consent of the city to the construction of the expressway was obtained by fraudulent or reckless misrepresentations made by the Department engineers to members of the City Council. Affidavits were submitted from the Councilmen who had voted against the resolution of consent. The affiants allege that they *590 had been misinformed by the Department with respect to six different matters bearing upon the necessity or desirability of the modified Adams-Jackson Street route. Affidavits to the contrary were filed by the seven Councilmen who voted for the resolution, and by the Deputy Engineer of the Department.
Upon these facts it is contended that the passage of the resolution was attended by fraud or bad faith, and that the consent of the City to the construction of the expressway was never validly obtained. In any event, it is said, there was a genuine issue of material fact before the trial court, arising out of the conflicting affidavits.
These contentions are based upon misconceptions of the law and of the effect of the evidence adduced.
(a) It is assumed that the law requires the consent of the City to any highway construction by the Department through the City.
This is not correct. The applicable statute is 17 Del.C. § 134(a) and (b). It reads:
"(a) The Department shall have no power, authority, or jurisdiction of the streets of any incorporated city or town, except as otherwise provided in this section, unless such power, authority or jurisdiction shall be voluntarily given and surrendered by such city or town to the Department, and then only upon such terms as the Department shall prescribe.
"(b) When in the judgment of the Department, the route for the construction or reconstruction of any State highway should continue through any incorporated city or town, the Department shall construct and maintain the highway through such incorporated city or town, such construction and maintenance to be at the sole expense of the Department. Whenever the Department shall construct a State highway through any such incorporated city or town, it shall not change the widths of the streets of the city or town except with the consent of the duly constituted governing body of the city or town." [Emphasis supplied.]
We had occasion to construe this statute in Campbell v. Commissioners of Town of Bethany Beach, Del., 139 A.2d 493, 498. It was contended in that case, in effect, that certain provisions of the city charter limited the authority of the Department under the quoted statute. Overruling this contention, we said:
"It seems obvious to us that 17 Del. C. § 134 gives the Highway Department the power to construct highways through municipalities with or without the consent of the municipal governing authorities, as long as the width of existing streets is not increased. Only when an increase in width is proposed, as is the case before us, is such consent required. That consent, when given, is not, as appellants seem to argue, a delegation of the Commissioners' power to lay out streets, but is merely consent on their part that the Highway Commission may exercise its own statutory power of condemnation (17 Del.C. § 132(c)) within the municipality."
It follows that the consent of the City to the proposed construction is not required unless one or more of the City streets is to be widened. The Vice Chancellor suggested a different conclusion, but we are compelled to disagree.
Plaintiffs insist, however, that there is an issue of fact whether one or more of the city streets will be widened as a result of the construction of the expressway. Plaintiffs filed an affidavit from an engineer, which alleges that the interchange in the City "would result in the widening of streets and affect existing street patterns." This is explicitly denied by the Deputy Chief Engineer of the Department, who certainly has full knowledge of the plans. We are inclined to think that the affidavit for plaintiffs refers to nothing more than *591 the breaking of the curb line of existing streets at points of interchange, that no proof of change of street width has been made, and that the consent of the City is unnecessary.
But even if the consent of the City was required, we are satisfied that it was properly given.
(b) The legal basis for the contention that the resolution was adopted "in bad faith" is found in an exception to the general rule that courts will not inquire into the motives of or inducements to legislators that may influence them in the passage of acts or resolutions. State ex rel. Craven v. Schorr, 50 Del. 365, 11 Terry 365, 131 A.2d 158 (general rule). The exception is that the validity of municipal ordinances or resolutions may be attacked if fraud or bad faith is proved. This rule is recognized in Delaware, although in none of the decided cases was any fraud or bad faith found. See Taylor v. Smith, 13 Del. Ch. 39, 46, 115 A. 405; Drexler v. Commissioners of Town of Bethany Beach, 15 Del.Ch. 214, 216, 135 A. 484; Lynch v. Town Council of Georgetown, 21 Del.Ch. 25, 29, 180 A. 594; Klaw v. Pau-Mar Construction Co., 50 Del. 487, 495, 11 Terry 487, 135 A.2d 123.
But the fraud or bad faith required to be shown refers to conduct of the legislators, not to conduct of third persons. Thus in Taylor v. Smith, supra [13 Del. Ch. 39, 115 A. 408], Chancellor Curtis speaks of "fraud or corruption with which the council's approval may be tainted". A fraudulent betrayal of the public interest by the councilmen must be shown. That interested parties misrepresented the facts to the councilmen is immaterial for "the validity and effect of legislative acts is not to be determined by the inducements that led to their enactment." Rosenberg v. Village of WhiteFish Bay, 199 Wis. 214, 225 N.W. 838, 840. To the same effect is Morgan v. Banas, 331 Mass. 694, 122 N.E. 2d 369. And see 5 McQuillen, Municipal Corporations, § 16.90; and Merrimon v. Southern Paving & Construction Co., 142 N.C. 539, 55 S.E. 366, 370, 8 L.R.A.,N.S., 574.
Nothing in plaintiffs' proof even remotely suggests any bad faith on the part of any councilman. This disposes of plaintiffs' principal contention with respect to the giving of the City's consent.
A subsidiary objection is lodged to Council's action. It is said that the consent should have been given by ordinance rather than by resolution. This distinction is sometimes of importance, since an ordinance must be adopted under certain rules and in Wilmington it must be submitted to the Mayor for approval or disapproval.
The Wilmington City Charter does not prescribe what acts of Council must be embodied in an ordinance. The general rule is stated in 5 McQuillen, Municipal Corporations, § 15.02:
"* * * a resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed."
Because of differences in municipal charters, a lengthy examination of decided cases would be of little value. In practice, so far as can be determined from our decisions, the above distinction has been recognized in Delaware. In cases in which the required action of the governing body is the giving of consent to proposed action by another body, involving no permanent legislation, a mere resolution has been used. See Drexler v. Commissioners of Town of Bethany Beach, supra; Lynch v. Town Council of Georgetown, supra; and Randolph v. Wilmington Housing Authority, Del., 139 A.2d 476. This, we think, is perfectly sound practice.
This conclusion receives some support from the section of the Wilmington *592 City Charter granting to the Council the power to enact "ordinances" for numerous purposes. Rev.Code of Wilmington, 1942, § 43, pp. 65-66. A reading of such powers shows that legislation of a general character and of a permanent nature is contemplated.
A further objection to Council's action is that the City's consent does not convey the street beds that the City owns and the Department is to acquire, and that the City cannot transfer title to the bed of its streets without a deed.
We have had some difficulty in understanding just what conclusion plaintiffs seek to draw from these facts. Apparently plaintiffs suggest that the Department cannot condemn the property it needs but must rely on the City's willingness to convey it. Since the Department is given power to condemn public property (as hereafter shown), there is nothing of substance in this contention.
Finally, it is said that the contract between the Department and the City is too vague and indefinite to be enforced. A mere reading of its terms shows the utter lack of merit in this contention. It is based upon a clause (Par. 5) providing that supplemental agreements are contemplated from time to time to deal with specific subjects that may arise. This does not make the agreement unenforceable.
The Vice Chancellor held that the City's consent to the construction of the expressway had been validly given. We agree with his conclusion.

2. The Right of Petition.

Plaintiffs seek to inject into the case a constitutional question. They refer to their petition to the Department of April 15, protesting against the construction of the proposed expressway, attacking the validity of the forthcoming public hearing, and asking a hearing to present objections to the Department. (Presumably their objection was to any route affecting their properties.) They say that the Department refused to accord them a formal hearing, and that such refusal was a violation of Art. I, Sec. 16, of the Constitution of the State of Delaware, Del.C.Ann., respecting the right of citizens peaceably to assemble and apply for redress of grievances by petition, remonstrance or other address; and a violation of the First Amendment to the federal constitution.
Since the petition was received by the Department and presumably given such consideration as the Department thought fit, the contention comes to this: that the right of petition includes the right to be formally heard, in person and by counsel.
Such a contention has the merit of novelty only. Only a moment's reflection will convince any reasonable person that no department of government could function if it were obliged to accord a formal hearing to every citizen choosing to protest any contemplated or completed official act. Historically, the right of petition means just what it says: the right to present to the sovereign a petition or remonstrance setting forth a protest or grievance arising out of governmental action, past or contemplated. It would be a perversion of the right to hold that it carries with it the right to debate in person or through counsel the subject matter of the remonstrance.
We are cited to no legal authority supporting the contention. Professor Corwin, a distinguished student of the United States Constitution, has discussed the historic right of petition guaranteed by the First Amendment. He has written:
"* * * The constitutional right of petition today seems to be satisfied when a petition is officially received." E. S. Corwin, The Constitution and What It Means Today; quoted in Vol. IV, Dictionary of American History (1940), p. 256.
We may add that the plaintiffs can have no just complaint that they were not heard. The record shows that the *593 views and arguments of plaintiffs' attorneys were on numerous occasions presented with considerable vigor to or in the presence of representatives of the Department.
Plaintiffs attempt to buttress this contention by arguing that the Department never held a public hearing because the April and May hearings were presided over by a private citizen. This is a mere quibble, since the Department called the hearing and its representatives were present. But all the criticism of the public hearings is beside the point. The state law requires no public hearing. The federal statute, as already noted, does require such a hearing. The State must comply with the federal law to obtain federal funds. It has so complied, because the project has been approved by the Bureau of Public Roads. The argument is beside the point.
Finally, plaintiffs assail the validity of the hearings on the ground that the Department acted "arbitrarily, capriciously and not in accordance with due process of law."
Under this heading of formidable words and phrases plaintiffs set forth a mélange of various arguments, some of which have already been considered and others of which are completely refuted by the record, e. g., that the Chairman of the public meetings had no authority to preside; that the Department did not give proper consideration to questions of cost, and loss to the City of tax revenue, urban and regional planning; and so forth.
The record before us completely refutes these charges.

3. The Taking of Park Land.

The building of the expressway requires the taking of a portion of park land in the City. 17 Del.C. § 175 provides in part:
"For the purposes of this subchapter the Department may acquire private or public property and property rights for controlled-access facilities and service roads, including rights of access, air, view, and light, by gift, device, purchase, or condemnation * * *".
This section is an explicit grant of power to the Department to condemn property already devoted to a public purpose.
Plaintiffs contend, however, that this power is limited within municipalities by § 134(a) above quoted. This subsection does not apply to cases "otherwise provided in this section". Subsection (b), as we have already held, dispenses with municipal consent to the construction of a highway through the municipality unless the width of a street is changed.
Plaintiffs rely also on 17 Del.C. § 173, which provides in part:
"The Department, acting alone or in cooperation with any other governmental agency or political subdivision of this State or with any Federal, State, or local agency of any other State having authority to participate in the construction and maintenance of highways, may plan, designate, establish, regulate, vacate, alter, improve, maintain, and provide controlled-access facilities for public use wherever the Department is of opinion that traffic conditions, present or future, will justify such special facilities, provided, that within cities and towns such authority shall be subject to such municipal consent as may be provided by law."
They say that the last clause of this section requires the consent of both City Council and of the Park Board to the taking of park land. This is a misreading of the language. Municipal consent is required only when required "by law". As we have seen, no such consent is required here unless the width of a street is changed, and then only from "the governing body", i. e., the Council.
The Vice Chancellor held that the Department had the power to condemn park land for the expressway, and we agree.
*594 The foregoing holding disposes of plaintiffs' final contention.
The conclusion must be that plaintiffs have no legal grievance, and the Vice Chancellor's decision to grant the Department's motion for summary judgment was correct.
We are not without sympathy for the plaintiffs and other property owners in like case. The sudden and drastic community changes that flow from the construction of these "super-highways" are understandably highly unpleasant to citizens whose homes are sacrificed to the modern demand for speed. But a reading of the record has convinced us that the Highway Department and the Wilmington City Council scrupulously observed the law.
The judgment of the Court of Chancery is affirmed.