THE CLEVELAND STEVEDORE CO. *v.* CITY OF CLEVELAND ET AL.

(No. 861497—Decided July 15, 1968.)

Common Pleas Court of Cuyahoga County.

*Mr. Robert G. McCreary, Jr., Mr. William S. Burton, Messrs. Arter, Hadden, Wykoff & Van Duzer,* for plaintiff, The Cleveland Stevedore Co.

92

*Mr. Clarence L. James, Jr.*, director of law, *Mr. John F. Dolan* and *Mr. Robert D. Chapin*, special counsel, for defendants, city of Cleveland, Carl B. Stokes, Mayor; Noel C. Painchaud, Director of the Department of Port Control; Jack W. Cox, Acting Director of Port Control; and Earle Butler, Commissioner of Harbors.

*Mr. Sheldon B. Guren, Mr. James M. Friedman, Messrs. Gottfried, Ginsberg, Guren & Merritt*, for the defendant, The Great Lakes International Corporation.

WHITING, J. By this action plaintiff taxpayer, The Cleveland Stevedore Company, has duly challenged the legality of a "Lease by Way of Concession," dated June 11, 1968, from defendant city of Cleveland for the exclusive operation of a pier concession at Docks 28, 30 and 32 by defendant The Great Lakes International Corporation for the period of June 15, 1968, to December 31, 1973. Plaintiff seeks an injunction against performance of the lease and an order declaring the lease and two related ordinances of the city of Cleveland to be null, void and of no effect.

Stated in general terms, the principal contentions of the plaintiff are that—

—the municipal ordinances leading to and authorizing the lease to The Great Lakes International Company are unconstitutional or otherwise unlawful, or were enacted in bad faith, fraud or abuse of discretion.

—defendant Noel C. Painchaud, Director of the Department of Port Control of the city of Cleveland, conducted his office with gross favoritism and a gross abuse of discretion amounting to fraud in connection with the award of the lease to The Great Lakes International Corporation, which infected the lease and the municipal ordinances leading to and approving the lease.

—Cleveland Stevedore has a valid, pre-existing contract with the city of Cleveland for the nonexclusive operation by it of Dock 32 for the entire 1968 season.

—procedures for advertising, competitive bidding and the like required by other ordinances of long standing and otherwise were not followed.

—procedures required by the enabling ordinance leading to the lease were not followed.

During 1967 there were two stevedoring companies operating in the Port of Cleveland—The Cleveland Stevedore Company and The Lederer Terminal Warehouse Company. Of the three city-owned piers in use one, known as the Stadium Pier, comprised five berths. These berths are identified as Dock 28 (2 berths), Dock 30 (1 berth), and Dock 32 (2 berths). Lederer had an exclusive lease until July 16, 1969, on Dock 30 plus a preferential right to one berth of Dock 28. The other berth of Dock 28 served a high lift crane jointly used by both companies. Dock 32 was used by both companies under nonexclusive permits from the city.

Due to the completion of extensive improvements at public expense, the use of Dock 32 became more attractive toward the end of the 1967 shipping season.

Great Lakes was incorporated on February 13, 1968, to conduct a stevedoring business. On February 20, 1968, it purchased the stevedore business of The Lederer Terminal Warehouse Company, including Lederer's lease on Dock 30 and the preferential right to use one berth of Dock 28. The next day, on February 21, 1968, the Board of Control of the city of Cleveland authorized the issuance of an exclusive permit to Great Lakes for the use of Dock 32 during the 1968 shipping season, as proposed by the Director of the Department of Port Control, defendant Noel C. Painchaud.

The evidence discloses that prior to consummation of the sale from Lederer to Great Lakes, defendant Painchaud discussed arrangements with the organizers of Great Lakes that, should the sale go through, he would attempt to get them an exclusive permit for Dock 32. Contrasted with his advice to Great Lakes, defendant Painchaud advised Cleveland Stevedore on January 25, 1968, that he anticipated Dock 32 would be operated in 1968 in the manner it was in 1967, that is, jointly by both companies. Again on February 15, 1968—just six days before the Board of Control acted on his proposal for an exclusive lease to Great Lakes—defendant Painchaud advised Cleve-

land Stevedore ''I will do everything that I can to see that you get the permits you are requesting.''

Cleveland Stevedore, upon its discovery of the action of the Board of Control, filed a taxpayer's suit, Case No. 857,523 upon the docket of this court, to enjoin performance of the permit to Great Lakes. On March 15, 1968, the court issued a temporary restraining order against performance of the permit. In a subsequent settlement conference between Cleveland Stevedore and the Director of Law of the city of Cleveland, it was agreed that the city would grant both stevedore companies nonexclusive permits for Dock 32 for the 1968 season if Cleveland Stevedore would dismiss its lawsuit. On March 29, 1968, a permit—by its terms cancellable without cause on 30 days notice—was issued to Cleveland Stevedore, whereupon Cleveland Stevedore dismissed its lawsuit. Cleveland Stevedore thereafter entered into various contracts to furnish stevedore services, acquired additional equipment, and began operations on the east face (1 berth) of Dock 32, all in reliance upon its permit.

On April 8, 1968, at defendant Painchaud's request, Ordinance 763-68 was introduced in city council. This ordinance, passed on April 22, 1968, authorized defendant Painchaud:

''* * * to solicit proposals and to negotiate for the leasing of any piers or docks of the city of Cleveland with any and all interested parties and, after approval by council, to enter into leases therefor with the parties deemed to be best able to advance the development of the Port of Cleveland thereby.''

Then, on April 30, 1968, defendant Painchaud caused the introduction of Ordinance 907-68 authorizing the lease of not one but three docks (28, 30 and 32) exclusively to Great Lakes for not one but six shipping seasons.

The terms of the lease set forth in and approved by Ordinance 907-68 were the result of negotiations by defendant Painchaud with Great Lakes. Painchaud, seeking to secure an exclusive lease for Great Lakes, conducted no negotiations with Cleveland Stevedore despite

Ordinance 763-68 and their repeatedly expressed interest. Other than Great Lakes, the record discloses no effort whatever by defendant Painchaud, at any time, to interest any person, firm or corporation in the furnishing of stevedore services on Dock 32, or, for that matter, on any city-owned dock.

On May 27, 1968, Ordinance 907-68 was passed by city council under suspension of the rules as an emergency measure. Cleveland Stevedore initiated the present action on June 4, 1968. The lease itself was executed by the city and Great Lakes on June 11, 1968. As authorized and executed the lease is substantially in the form proposed by defendant Painchaud but with an added provision that the city may cancel at the end of the 1969 shipping season.

The welfare of the people of Cleveland is the objective to be sought in the negotiation of a lease such as this. Financial return in the form of lease payments is not the sole criterion, however, and other benefits such as an increase in the flow of goods through the port may properly be sought. The effect of consolidating stevedore operations on the Stadium Pier under one company and of balancing the respective competitive positions of Cleveland's two stevedore companies may be considered and evaluated. In 1965, these and other related problems were studied in depth by the firm of Ernst and Ernst at the instance of the Cleveland Development Foundation. During council's consideration of Ordinance 907-68 and the lease to Great Lakes it had the benefit of the Ernst and Ernst report as well as the testimony of other experts such as Robert G. McCreary, Jr., expert maritime counsel representing Cleveland Stevedore, William J. Rogers, former Port Director of the city of Cleveland, and Harry F. Burmeister, Chairman of the recently established Cleveland-Cuyahoga County Port Authority.

Under the circumstances, on the evidence presented, it cannot be found that the action of city council in passing Ordinance 907-68 and authorizing the lease to Great Lakes was arbitrary, unreasonable or unrelated to public welfare.

The same can not be said regarding defendant Pain-

chaud's performance of his official duties preliminary to the lease to Great Lakes. If the lease had to rely upon his administration for its validity it would fail. However, it does not. It relies upon the action of council in passing Ordinance 907-68. In the opinion of this court, Ordinance 907-68 was a valid exercise of council's legislative power.

This exercise of legislative power by city council cannot be upset by reason of the failure of defendant Painchaud to perform the duties of his office; nor, for that matter, can this court review the motives of council members in passing such legislation, nor can the court substitute its own judgment for that of council as to the wisdom of or necessity for the lease to Great Lakes. *Krieg v. City of Springfield* (1952), 106 N. E. 2d 652; *State, ex rel. Schafer, v. Ohio Turnpike Commission* (1953), 159 Ohio St. 581; *Stone, ex rel. Village of Manchester, v. Osborn, Mayor* (1927), 24 Ohio App. 251; *Brockmeier v. City of Cheviot* (1952), 108 N. E. 2d 592; *Piekarski v. Smith* (1959), 153 A. 2d 587. It is only when there is proven bad faith, fraud or abuse of discretion on the part of the councilmen themselves that judicial inquiry will be made by the court into the motives or inducements that may have influenced their legislation. *Piekarski v. Smith* (1959), 152 A. 2d 587. Nothing in plaintiff's proof demonstrates bad faith, fraud or abuse of discretion on the part of any councilman or, for that matter, on the part of any city official other than defendant Painchaud.

On the surface it may appear to some, as it does to the plaintiff, that the court should step in and upset legislation when it develops that the administrative official who presented it to council acted improperly or with improper motives. However, the doctrine of separation of powers stands in the way of such interference. Our courts exist solely to declare and enforce the law, and are without authority as to matters of government policy. The people elect their council representatives to administer the affairs of the city, and it is each councilman's duty to exercise his own discretion as to what should be done. The pressures, the inducements, the arguments brought to bear by third

parties to encourage legislative action are many and varied. It is up to the councilmen to evaluate these and to act in the public interest. This court may not and will not assume they are inadequate to the task. So long as there is no proof of bad fath, fraud or abuse of discretion on the part of the councilmen themselves, the court will not interfere. To interfere in the absence of such proof would be to substitute the court's own evaluation—*i. e.*, the discretion of the court—for that of city council. This is not permitted by law. Should council fail to exercise sound judgment in these matters, the remedy is at the polls, not in the courts.

The plaintiff's initial position in this case was that it has a firm oral contract, made with the law director of the city of Cleveland, for the nonexclusive use of Dock 32 by Cleveland Stevedore for the entire 1968 season. However, that contract, if it may be so identified, is not binding upon the city; nor is the city estopped to abrogate it in any proper manner deemed by city council to be in the public interest.

As developed later in this opinion, the city charter confers all powers of self-government upon city council, which powers include the power to lease city-owned real estate. Thus, the law director had no power to bind the city as against possible future action by council (*State, ex rel. Gordon,* v. *Taylor* [1948], 149 Ohio St. 427), a point with which Cleveland Stevedore was charged with notice. *City of Lancaster* v. *Miller* (1898), 58 Ohio St. 558. Even if the law director had such power, the written permit itself—signed, accepted and exercised by Cleveland Stevedore wthout objection—was in the usual form and contained the usual clause authorizing cancellation without cause by either party on 30 days notice, a fact of which Cleveland Stevedore must be deemed to have been fully aware. Thus, at best, all that Cleveland Stevedore had was a revocable authorization to use public property, subject to whatever future action city council might duly take by way of abrogation.

Ordinance 763-68, which plaintiff argues is unconstitutional, merely assigns certain administrative duties to the

Director of the Department of Port Control. Full power to authorize or reject a lease is expressly retained by council and is retained as a matter of law. In fact, it was Ordinance 907-68 and not Ordinance 763-68 that approved and authorized the lease to Great Lakes. Accordingly, the various issues raised by the plaintiff to challenge the validity of Ordinance 763-68 need not be considered.

Plaintiff contends that the lease to Great Lakes is void for lack of compliance by the city with the Codified Ordinances of the City of Cleveland requiring preliminary findings (Section 1.4402 re findings to be made by the Board of Control before real estate is sold or leased), advertising (Section 1.4405 re lands to be sold or leased), bidding procedures (Sections 1.4320-1.4333) and the licensing of wharfage collectors (Section 7.1305). However, the city of Cleveland has full power of local self-government (*Fitzgerald* v. *City of Cleveland* [1913], 88 Ohio St. 338; *Perrysburg* v. *Ridgway* [1923], 108 Ohio St. 245, and the city charter confers all such powers on city council, which powers include the power to lease city-owned real estate (*Babin* v. *Ashland* [1953], 160 Ohio St. 328; *State, ex rel. Gordon,* v. *Rhodes* [1951], 156 Ohio St. 81; *State, ex rel. Gordon,* v. *Rhodes* [1952], 158 Ohio St. 129). Inasmuch as council cannot divest itself of any of these powers (*Bauman* v. *State, ex rel. Underwood* [1930], 122 Ohio St. 269; *Courtney* v. *Cleveland* [1955], Court of Appeals, Eighth Appellate District, No. 23067, it follows that prior ordinances cannot control the present action of council. Ordinance 907-68 authorizing the lease therefore takes effect as an exception to the general ordinances cited. No amendment or repeal of the general ordinances is required. *Scribner* v. *City of Cleveland* (1966), Common Pleas, Cuyahoga County, No. 810933, aff'd Court of Appeals, Eighth Appellate District, July 1, 1967. Similarly, the fact that defendant Painchaud failed to solicit proposals and negotiate in the sense required by Ordinance 763-68, while most unfortunate, is not significant to this action. To hold otherwise would be to hold that by passing Ordinance 763-68 council divested itself of its power to pass Ordinance 907-68.

Plaintiff contends also that due to the absence of public advertising for bids, competitive bidding and the like, the action of council in passing Ordinance 907-68 was illegal and void. Again, reference is made to the city's plenary power of self-government and the conferring of this power on council by the city charter. In the absence of any requirement in the charter for advertising, bidding, etc., these alleged requirements simply do not exist as such.

Ordinance 907-68 was passed as an emergency measure providing for the usual daily operation of a municipal department, to take effect immediately upon passage by a two-thirds vote and approval by the mayor. Plaintiff urges that the ordinance is void because the authorized lease is a "franchise" and Section 36 of the city charter, authorizing emergency measures, expressly provides that "* * * no measure making a grant, renewal or extension of a franchise or other special privilege * * * shall ever be so passed." However, the authorized lease is not a "franchise or other special privilege" within the meaning of the charter.

There being no cause of action proven, dismissal will be ordered as to all defendants, at plaintiff's costs. Defendant city of Cleveland will prepare and submit a form of journal entry accordingly.