NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2021-0325

DANIEL RICHARD

v.

SPEAKER OF THE HOUSE OF REPRESENTATIVES & a.

Argued: April 21, 2022
Opinion Issued: July 6, 2022

Daniel Richard, self-represented party, on the brief and orally.

James S. Cianci, house legal counsel, on the brief and orally, for the Speaker of the New Hampshire House of Representatives.

Lehmann Major List, PLLC, of Concord (Richard J. Lehmann on the memorandum of law and orally), for the New Hampshire Senate President.

HICKS, J. The plaintiff, Daniel Richard, appeals an order of the Superior Court (Kissinger, J.) granting the motion filed by the defendants, the Speaker of the New Hampshire House of Representatives and the New Hampshire Senate President, to dismiss his complaint seeking equitable relief. The plaintiff sought under Part I, Articles 31 and 32 of the State Constitution: (1) a writ of mandamus to compel the Speaker to assemble the legislature to hear his May 2019 and January 2020 remonstrances; (2) a writ of prohibition to prohibit the

Speaker and the Senate President from preventing any document addressed to the legislature from being publicly recorded and heard by the legislature as a whole; and (3) an order preventing the legislature from violating his due process rights. The trial court dismissed the plaintiff's requests for writs of mandamus and prohibition after deciding that his right to relief was not clear under Part I, Articles 31 and 32. The trial court dismissed the plaintiff's due process claim because it found, in part, that the decision not to hear his remonstrances was "rationally related to the legitimate government interest of running the legislature efficiently and economically." We affirm.

I. Facts

Accepting the factual allegations in the plaintiff's complaint as true, the pertinent facts are as follows. See Coyle v. Battles, 147 N.H. 98, 100 (2001) (noting that, when reviewing a trial court's dismissal of a plaintiff's action, we "assume the truth of all well-pleaded facts" alleged by the plaintiff). On May 20, 2019, the plaintiff filed a remonstrance with the Secretary of State, the Governor, and the clerks of the House of Representatives and the Senate. His remonstrance complained that RSA chapter 654 diluted his vote because it granted "the right of suffrage to unqualified resident aliens."

The House Clerk received the remonstrance, but did not publish it or recognize its receipt in the House Calendar. The plaintiff re-filed his remonstrance and the House Clerk eventually published it in the House Calendar on December 31, 2020.

The plaintiff filed a second remonstrance with the same offices on January 6, 2020. His second remonstrance complained about House Bill 687-FN, a so-called "red flag" bill.[1] See HB 687-FN (2019) (legislation "relative to extreme risk protection orders"). The January 10, 2020 House Calendar reflected receipt of the remonstrance, stating that it had been filed and was "available for inspection in the Office of the Clerk of the House." Neither the Speaker nor the Senate President otherwise notified their respective legislative bodies.

The plaintiff spoke with the Speaker and the House Clerk on January 26, 2021, who informed him that they would neither submit the remonstrances to the legislature nor assemble the legislature to hear them. The instant complaint was filed on March 25, 2021. The defendants moved to dismiss the complaint, arguing that the controversy is nonjusticiable because it involves

---

[1] A "red flag" law allows "courts to order that firearms be temporarily removed from individuals who pose an imminent risk of harm to themselves or others." Joseph Blocher & Jacob D. Charles, Firearms, Extreme Risk, and Legal Design: "Red Flag" Laws and Due Process, 106 Va. L. Rev. 1285, 1286 (2020).

political questions and that, even if it were justiciable, the plaintiff is not entitled to the equitable relief that he seeks because the New Hampshire Constitution does not require the legislature to hold hearings on remonstrances. The plaintiff countered that the complaint raises justiciable questions because his constitutional rights are at stake and that he is entitled to the requested equitable relief.

The trial court ruled that the dispute was justiciable, but dismissed the complaint on the ground that the plaintiff was not entitled to his requested relief. The plaintiff unsuccessfully moved for reconsideration, and this appeal followed.

II. Analysis

"In reviewing the trial court's grant of a motion to dismiss, our standard of review is whether the allegations in plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." Plaisted v. LaBrie, 165 N.H. 194, 195 (2013). "We assume that the plaintiff's pleadings are true and construe all reasonable inferences in the light most favorable to him." Id. "However, we need not assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law." Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 673 (2017). We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. Plaisted, 165 N.H. at 195.

A. Justiciability

"Because the existence or absence of jurisdiction determines whether we may proceed to the merits of the appeal," Appeal of Cole, 171 N.H. 403, 408 (2018), we first consider whether, as the trial court determined, the issues in this case are justiciable. Although no party has appealed the trial court's determination, we must satisfy ourselves that we have subject matter jurisdiction to decide this case. See In re Guardianship of K.B., 172 N.H. 646, 648 (2019) (explaining that we may "raise subject matter jurisdiction sua sponte"); Baines v. N.H. Senate President, 152 N.H. 124, 128 (2005) (reviewing the argument, raised for the first time on appeal, that the appellate questions constitute nonjusticiable political questions because "justiciability is essentially a jurisdictional issue" and, "[a]s with other kinds of jurisdictional questions, . . . we may address justiciability even if this issue is raised for the first time on appeal").

Courts lack jurisdiction to decide political questions. See Burt v. Speaker, N.H. House of Representatives, 173 N.H. 522, 525 (2020); Baines, 152 N.H. at 128 (explaining that "[i]f a question is not justiciable, it is not ours to

review"). Whether a controversy is nonjusticiable because it involves a political question presents a question of law, which we review de novo. Burt, 173 N.H. at 525.

Cases that raise nonjusticiable political questions have the following characteristics: (1) "'a textually demonstrable constitutional commitment of the issue to a coordinate political department'"; (2) "'a lack of judicially discoverable and manageable standards for resolving it'"; (3) "'the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion'"; (4) "'the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government'"; (5) "'an unusual need for unquestioning adherence to a political decision already made'"; or (6) "'the potentiality of embarrassment from multifarious pronouncements by various departments on one question.'" Baines, 152 N.H. at 129 (quoting Baker v. Carr, 369 U.S. 186, 217 (1962)). "The nonjusticiability of a political question derives from the principle of separation of powers," Burt, 173 N.H. at 525 (quotation omitted), as set forth in Part I, Article 37 of our State Constitution, see N.H. CONST. pt. I, art. 37. "The justiciability doctrine prevents judicial violation of the separation of powers by limiting judicial review of certain matters that lie within the province of the other two branches of government." Burt, 173 N.H. at 525 (quotation omitted).

"Deciding whether a matter has in any measure been committed by the Constitution to another branch of government . . . is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution." Baker, 369 U.S. at 211 (referring to the United States Supreme Court's interpretation of the Federal Constitution); Hughes v. Speaker, N.H. House of Representatives, 152 N.H. 276, 283 (2005) (adopting Baker under the State Constitution). "Where there is such commitment, we must decline to adjudicate the matter to avoid encroaching upon the powers and functions of a coordinate political branch." Burt, 173 N.H. at 525 (quotation omitted).

However, concluding that the State Constitution commits to a coordinate branch of government certain exclusive authority does not necessarily end the justiciability inquiry. See id. at 525-26. For instance, we have recognized that, although the authority to adopt internal procedural rules has been demonstrably committed to the legislature, the question of whether a constitutionally-mandated procedure has been followed is justiciable. See Baines, 152 N.H. at 132. "[W]hen the question presented is whether or not a violation of a mandatory constitutional provision has occurred, it is not only appropriate to provide judicial intervention, we are mandated to do no less." Id. (quotation and ellipsis omitted).

Here, in effect, we have been asked whether the Speaker and the Senate President, on behalf of their respective legislative bodies, failed to comply with

4

constitutional mandates.  We conclude that this question is justiciable.  However, to the extent that the constitution vests the Speaker and the Senate President, on behalf of their legislative bodies, with the discretion to take certain actions, we conclude that whether they erred in the manner in which they exercised that discretion is not justiciable.  See Sumner v. N.H. Sec'y of State, 168 N.H. 667, 672 (2016) (explaining that, because the State Constitution vests the legislature with the authority to adopt procedural rules for enacting legislation, and the "legislature, alone, has complete control and discretion whether it shall observe, enforce, waive, suspend, or disregard its own rules of procedure," the plaintiff's claim alleging that the legislature violated its own procedural rules was nonjusticiable (quotation omitted)).

B.  Part I, Articles 31 and 32

We begin by examining whether, as the plaintiff argues, Part I, Articles 31 and 32 required the legislature to hold a hearing on his petitions for remonstrance.  We review the trial court's construction of constitutional provisions de novo.  HSBC Bank USA v. MacMillan, 160 N.H. 375, 376 (2010).  "When interpreting a constitutional provision, we will look to its purpose and intent, bearing in mind that we will give the words in question the meaning they must be presumed to have had to the electorate when the vote was cast."  Petition of Below, 151 N.H. 135, 139 (2004) (quotation omitted).  Reviewing the history of the constitution and its amendments is often instructive so that we may place ourselves "as nearly as possible in the situation of the parties at the time the instrument was made, [and] . . . gather their intention from the language used, viewed in the light of the surrounding circumstances."  Id. (quotation omitted).  "The language used by the people in the great paramount law which controls the legislature as well as the people, is to be always understood and explained in that sense in which it was used at the time when the constitution and the laws were adopted."  Id. (quotation and ellipsis omitted).

We first consider the plain language and history of Part I, Article 32.  Part I, Article 32 has been part of the State Constitution since 1784 and has not been amended.  See 6 Sources and Documents of U.S. Constitutions 344, 347 (William F. Swindler ed. 1976); N.H. CONST. pt. I, art. 32.  Except for minor differences in punctuation, Part I, Article 32 provides now as it provided when it was first enacted:

The people have a right, in an orderly and peaceable manner, to assemble and consult upon the common good, give instructions to their representatives, and to request of the legislative body, by way of petition or remonstrance, redress of the wrongs done them, and of the grievances they suffer.

5

N.H. CONST. pt. I, art. 32; see 6 Sources and Documents of U.S. Constitutions, supra at 344, 347.

To the framers, the word "redress" in this context meant to remedy or repair. 2 Webster's American Dictionary of the English Language 53 (1828) (defining the verb form of the word as "[t]o remedy; to repair; to relieve from, and sometimes to indemnify for; as, to redress wrongs; to redress injuries; to redress grievances. Sovereigns are bound to protect their subjects, and redress their grievances."); 2 Webster's American Dictionary of the English Language, supra at 53 (defining the noun form of the word as "[r]elief; remedy; deliverance from wrong, injury, or oppression: as the redress of grievances. We applied to government, but could obtain no redress."); 2 Samuel Johnson, A Dictionary of the English Language (4th ed. 1773) (defining the verb "redress" as to "relieve," "remedy," or "ease" as in, "In countries of freedom, princes are bound to protect their subjects in liberty, property and religion, to receive their petitions, and redress their grievances" (quotation omitted)). The noun "petition" referred to a written or formal request "to a legislative or other body, soliciting some favor, grant, right or mercy." 2 Webster's American Dictionary of the English Language, supra at 34. A "grievance" was defined as "that which burdens, oppresses, or injures, implying a sense of wrong done, or a continued injury, and therefore applied only to the effects of human conduct; never to providential evils" as in, "The oppressed subject has the right to petition for a redress of grievances." 1 Webster's American Dictionary of the English Language 94 (1828). A "remonstrance" as used in Part I, Article 32 was a "strong representation of reasons against a measure," which "when addressed to a public body . . . may be accompanied with a petition or supplication for the removal or prevention of some evil or inconvenience," as in "[a] party aggrieved presents a remonstrance to the legislature." 2 Webster's American Dictionary of the English Dictionary, supra at 55. Thus, pursuant to its plain language, as understood by the framers, Part I, Article 32 grants citizens the right to request, by way of a formal petition or remonstrance, that the legislature right a wrong.

The United States Supreme Court has held that the analogous provision of the First Amendment does not include a right to a response. The First Amendment to the Federal Constitution provides, in pertinent part, that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. In Smith v. Arkansas State Highway Employees, 441 U.S. 463 (1979), the Court ruled that the state highway commission had not violated the First Amendment by failing to respond to or consider grievances that employees had submitted through their union because "the First Amendment does not impose any affirmative obligation on the government to listen" or "respond" to such grievances. Smith, 441 U.S. at 463-64 & n.1, 465.

Similarly, in <u>Minnesota Board for Community Colleges v. Knight</u>, 465 U.S. 271 (1984), the Court held that a state law that required public employers to discuss certain matters exclusively with a union representative, instead of with employees directly, did not violate the First Amendment because "[n]othing in [that amendment] or in [the] Court's case law interpreting it suggests" that the right to petition requires "government policymakers to listen or respond to individuals' communications on public issues." <u>Knight</u>, 465 U.S. at 274-75, 285, 286-87. The Court held that individuals "have no constitutional right as members of the public to a government audience for their policy views." <u>Id</u>. at 286.

Some commentators have suggested that the Court in <u>Smith</u> and <u>Knight</u> "overlooked important historical information regarding the right to petition," and, therefore, erred by concluding that the federal right to petition does not include a right to a governmental response. <u>We the People Foundation, Inc. v. United States</u>, 485 F.3d 140, 144 (D.C. Cir. 2007). "Those commentators point to the government practice of considering petitions in some quasi-formal fashion from the 13th century in England through American colonial times—a practice that continued in the early years of the American Republic." <u>Id</u>. "Based on this historical practice, . . . these commentators contend that the Petition Clause should be interpreted to incorporate a right to a response to or official consideration of petitions." <u>Id</u>.; <u>see, e.g.</u>, Stephen A. Higginson, <u>A Short History of the Right To Petition Government for the Redress of Grievances</u>, 96 Yale L.J. 142, 155 (1986); James E. Pfander, <u>Sovereign Immunity and the Right to Petition: Toward a First Amendment Right to Pursue Judicial Claims Against the Government</u>, 91 Nw. U. L. Rev. 899, 905 & n. 22 (1997); Julie M. Spanbauer, <u>The First Amendment Right to Petition Government for a Redress of Grievances: Cut From a Different Cloth</u>, 21 Hastings Const. L.Q. 15, 33 (1993).

"Other scholars disagree, arguing based on the plain text of the First Amendment that the right to petition the government for a redress of grievances really is just a right to petition the government for a redress of grievances." <u>We the People Foundation, Inc.</u>, 485 F.3d at 144 (quotation omitted). "These scholars note that the Petition Clause by its terms refers only to a right 'to petition'; it does not also refer to a right to response or official consideration." <u>Id</u>.; <u>see, e.g.</u>, Gary Lawson & Guy Seidman, <u>Downsizing the Right to Petition</u>, 93 Nw. U. L. Rev. 739, 759-62 (1999); Norman B. Smith, <u>"Shall Make No Law Abridging . . .": An Analysis of the Neglected, but Nearly Absolute, Right of Petition</u>, 54 U. Cin. L. Rev 1153, 1190-91 (1986).

We need not decide in this case whether Part I, Article 32 of the New Hampshire Constitution requires the legislature to <u>respond</u> to a remonstrance because the plaintiff did not seek a response; rather, he sought a legislative hearing. In his complaint, the plaintiff alleged that the Speaker acted unconstitutionally because he neglected "to call to assemble the legislative

7

body as a whole, [so] as to provide [him] with redress of grievances." The plaintiff requested an order "compelling [the] Speaker . . . (to assign to a committee for public hearing) to assemble the legislative body as a whole for a public hearing as stated in the Constitution for redress of grievances." Accordingly, in light of the plaintiff's allegations, the question we must answer is whether Part I, Article 32, alone or in conjunction with other constitutional provisions, obligates the legislature to assemble in order to hold a public hearing on a remonstrance.[2]

Even those commentators who believe that, historically, the right to petition included the right to a response agree that it did <u>not</u> include a right to a hearing. See Spanbauer, <u>supra</u> at 50-51. As one commentator has noted, "[a] petitioner never possessed the right to a full legislative discussion or a debate of a particular petition, nor to a public forum to present testimony relevant to a petition." Spanbauer, <u>supra</u> at 51. And, as another has stated with regard to the right to petition in the First Amendment, "the duty, if any, that the First Amendment imposes on government to respond to petitions likely is minimal" and does not include "giv[ing] petitioners the opportunity to personally appear and present their views." Carol Rice Andrews, <u>A Right of Access to Court under the Petition Clause of the First Amendment: Defining the Right</u>, 60 Ohio St. L.J. 557, 643-44 (1999).

Courts construing the right to petition in other state constitutions have ruled that the right to petition does not include a right to a legislative hearing. In <u>Richards Furniture Corp. v. Board of County Commissioners</u>, 196 A.2d 621 (Md. 1964), for instance, the Maryland Court of Appeals held that the right to petition in the Maryland Constitution "does not require that a hearing be held upon suggested legislation." <u>Richards Furniture Corp.</u>, 196 A.2d at 626. The court explained that, in its view, the framers of the Maryland Declaration of Rights "intended no more than to permit any person or peaceable assembly of persons, without fear of reprisal or prosecution, to communicate directly with the legislative body by way of a statement of grievances and a petition requesting a correction of wrongs previously committed." <u>Id</u>.

The Alabama and Delaware Supreme Courts have similarly ruled that the petition clause in their respective constitutions does not entitle a citizen to a hearing. See <u>Courtyard Manor v. City of Pelham</u>, 295 So. 3d 1061, 1064-65 (Ala. 2019); <u>Piekarski v. Smith</u>, 153 A.2d 587, 592 (Del. 1959). The petition clause of the Alabama Constitution provides that "the citizens have a right, in a

---

[2] Although on appeal, in addition to referring to the right to petition contained in Part I, Article 32, the plaintiff refers to the right to instruct contained in the same constitutional provision, his complaint was based solely upon the right to petition. See N.H. CONST. pt. I, art. 32 ("The People have a right, in an orderly and peaceable manner, to assemble and consult upon the common good, give instructions to their representatives, and to request of the legislative body, by way of petition or remonstrance, redress of the wrongs done them, and of the grievances they suffer."). Accordingly, we do not address his arguments related to the right to instruct.

peaceable manner, to assemble together for the common good, and to apply to those invested with the power of government for redress of grievances or other purposes, by petition, address, or remonstrance." ALA. CONST. art. I, § 25. In Courtyard Manor, the court rejected the appellant's argument that the provision required the city council to conduct a hearing on the appellant's petition, noting that "the . . . words 'address' and 'remonstrance' . . . merely denote[] various methods of applying to the government for the redress of grievances." Courtyard Manor, 295 So. 3d at 1063, 1065. The court explained that it was required by the separation of powers doctrine to "respect the legislative function of governments and not intrude on their separate, but coequal, power to decide when, where, and whether to conduct hearings." Id. The court further explained that "[l]egislative inaction . . . is cured not by court intervention, but at the ballot box." Id.

The appellants in Piekarski, like the appellant in Courtyard Manor, argued that they were entitled to a hearing on their petition. Piekarski, 153 A.2d at 592. In rejecting the argument, the Delaware Supreme Court observed that "[h]istorically, the right of petition means just what it says: the right to present to the sovereign a petition or remonstrance setting forth a protest or grievance arising out of governmental action, past or contemplated." Id. "It would be a perversion of the right to hold that it carries with it the right to debate in person or through counsel the subject matter of the remonstrance." Id.

A Tennessee intermediate appellate court reached a similar conclusion regarding the petition clause in the Tennessee Constitution. See Gentry v. Former Speaker of the House Glen Casada, No. M2019-02230-COA-R3-CV, 2020 WL 5587720, at *2-5 (Tenn. Ct. App. Sept. 17, 2020), cert. denied, 141 S. Ct. 2804 (2021). The Tennessee right to petition provides: "That the citizens have a right, in a peaceable manner, to assemble together for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address or remonstrance." TENN. CONST. art. 1, § 23. The court ruled that this provision did not confer upon the appellant "a clearly established right to have his petition heard or considered by either house of the General Assembly." Gentry, 2020 WL 5587720, at *5. Nor did it require the legislature "to read at the table or to hear and decide [the appellant's] petition of remonstrance." Id.

The plaintiff argues that, in contrast to other state constitutions, the New Hampshire Constitution "confers a right on a citizen to orally address the Senate and the House." He argues that Part I, Article 32 must be read together with Part I, Article 31 and Part I, Article 30, and that, collectively, these provisions establish that right. We disagree.

The plain language of Part I, Articles 31 and 30 of the State Constitution does not support the plaintiff's assertions. As originally enacted in 1784, Part

9

I, Article 31 provided: "The legislature ought frequently to assemble for the redress of grievances, for correcting, strengthening and confirming the laws, and for making new ones, as the common good may require."  6 Sources and Documents of U.S. Constitutions, supra at 344, 347.  Part I, Article 31 was amended in 1792 pursuant to a constitutional convention.  See Manual of the Constitutional Convention of 1918 99, 112 (1918).  As amended in 1792, Part I, Article 31 provided:  "The legislature shall assemble for the redress of public grievances, and for making such laws as the public good may require." Id. at 99, 112.  Part I, Article 31 has not been amended since.  See N.H. CONST. pt. I, art. 31.

Not long after Part I, Article 31 was amended, we had occasion to interpret it in Merrill v. Sherburne, 1 N.H. 199 (1818).  In that case, the appellant had successfully petitioned the legislature to order a new trial after the superior court (acting as an appellate court) had reversed a probate court decision.  Merrill, 1 N.H. at 199.  We explained that ordering a new trial was "a judicial act" because "[i]t is the province of judicial power . . . to decide private disputes between or concerning persons." Id. at 204-05 (quotation omitted). We explained that, by contrast, it is the province of the legislature "to regulate publick concerns and to make laws for the benefit and welfare of the state." Id. at 204 (quotation omitted).  Although we acknowledged that the legislature had historically granted new trials, we observed that this practice "commenced under colonial institutions, where legislative powers were neither understood nor limited as under our present constitution." Id. at 216.

In Merrill, we clarified that the phrase "redress of public grievances" in Part I, Article 31 refers merely to the legislature's authority to enact laws for the public good.  See id. at 206-07 (quotation omitted).  We held that "the obvious meaning" of Part I, Article 31 is that public "grievances should be redressed by 'laws,'" and we observed that other constitutional provisions confer upon the legislature "only legislative power for the purpose of effecting that 'redress.'" Id.  Thus, Part I, Article 31 must be construed in conjunction with other constitutional provisions pertaining to legislative authority such as Part II, Article 2, which vests the legislature with the "supreme legislative power," and Part II, Article 5, which grants the legislature the "full power and authority" to make "all manner of wholesome and reasonable . . . laws [and] statutes] . . . as [the legislature] may judge for the benefit and welfare of this state." N.H. CONST. pt. II, arts. 2, 5.

As such, Part I, Article 31 confers no particular rights upon individual citizens.  Rather, it "describes the entire purpose of the legislature." David C. Steelman & John Cerullo, Judicial Accountability in a Time of Tumult: New Hampshire's Impeachment Crisis of 2000, 69 Rutgers L. Rev. 1357, 1392 n.158 (2017); see Lawrence Friedman, The New Hampshire State Constitution 100

10

(2d ed. 2015) (explaining that Part I, Article 31 "articulates the primary purposes for which the legislature is to assemble"). Accordingly, the plaintiff's reliance upon Part I, Article 31 is misplaced.

His reliance upon Part I, Article 30 is also mistaken. Part I, Article 30, the Speech and Debate Clause of the State Constitution, protects the legislature's right to free deliberation and debate. Hughes, 152 N.H. at 290. Part I, Article 30 provides: "The freedom of deliberation, speech, and debate, in either house of the legislature, is so essential to the rights of the people, that it cannot be the foundation of any action, complaint, or prosecution, in any other court or place whatsoever." N.H. CONST. pt. I, art. 30. The New Hampshire Speech and Debate Clause "is the equivalent of the speech or debate clause, article I, section 6 of the United States Constitution." Hughes, 152 N.H. at 291 (quotation omitted). "Both the State and federal clauses appear to have emanated from the English Bill of Rights of 1689," which "was established to ensure that the freedom of speech and debates or proceedings in Parliament ought not to be impeached or questioned in any court or place out of Parliament." Id. (quotation omitted).

The central purpose of the clause is to preserve separation of powers. See id. at 291-92. As the Supreme Court has stated with regard to the federal Speech or Debate Clause, "[t]he central role of the Speech or Debate Clause [is] to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." Gravel v. United States, 408 U.S. 606, 617 (1972). "[I]ts purpose was to preserve the constitutional structure of separate, coequal, and independent branches of government" by "insuring the independence of individual legislators." United States v. Helstoski, 442 U.S. 477, 491, 493 (1979) (quotation omitted). "It assures that the legislature, as a co-equal branch of government, will have wide freedom of speech, debate and deliberation without intimidation or threats." Hughes, 152 N.H. at 291-92 (quotation omitted). In general, the New Hampshire Speech and Debate Clause, like the federal Speech or Debate Clause, "protects the legislature and individual legislators from incurring liability for any act generally done in a session of the legislature in relation to the business before it." Id. at 292 (quotation, brackets, and ellipsis omitted); see Doe v. McMillan, 412 U.S. 306, 311-12 (1973) (interpreting federal clause).

Thus, Part I, Article 30 protects the right of individual legislators and the legislature as a whole to freely deliberate and debate. While this right inures to the benefit of the public, Part I, Article 30 confers no right upon members of the public to participate in legislative debate or deliberation. See Hughes, 152 N.H. at 291-92. Simply put, Articles 30 and 31 do not support the plaintiff's contention that the New Hampshire Constitution grants him the right to speak before the legislature on his remonstrances.

The plaintiff appears to maintain that he had a due process right to a legislative hearing on his remonstrances. See N.H. CONST. pt. I, art. 15. The United States Supreme Court rejected a similar argument in Bi-Metallic Co. v. Colorado, 239 U.S. 441 (1915), construing the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. See U.S. CONST. amend. XIV. The question in Bi-Metallic was whether "all individuals have a constitutional right to be heard before a matter can be decided in which all are equally concerned," such as when a state "board decides that the local taxing officers have adopted a system of undervaluation throughout a county." Bi-Metallic, 239 U.S. at 445. The Court ruled that there is no such right, explaining:

> Where a rule of conduct applies to more than a few people, it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. If the result in this case had been reached as it might have been by the State's doubling the rate of taxation, no one would suggest that the Fourteenth Amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it before the body entrusted by the state constitution with the power.

Id.

We adopt the same reasoning under our State Constitution. As Chief Justice Doe explained in State v. Hayes, 61 N.H. 264 (1881), ours is a representative democracy, not a "pure democracy." Hayes, 61 N.H. at 328. "It is inherent in a republican form of government that direct public participation in government policymaking is limited." Knight, 465 U.S. at 285. "Not least among the reasons for refusing to recognize such a right is the impossibility of its judicial definition and enforcement," implicating separation-of-powers concerns. Id. "However wise or practicable various levels of public participation in various kinds of policy decisions may be," nothing in the Due Process Clause of the State Constitution suggests that "government must provide for such participation." Id. (discussing the Federal Constitution). Thus, the plaintiff's reliance upon his due process rights under the State Constitution is also unavailing.

The plaintiff also asserts that the right to request that the legislature redress a grievance "requires . . . [it] to hear, consider, and judge the grievance and remedy the complaint" because: (1) Part I, Article 12 provides for taxation

12

of citizens to share the expense of governing; and (2) Part I, Article 14 provides a right to a remedy.  See N.H. CONST. pt. I, arts. 12, 14.  His argument appears to be that because citizens are taxed, they have a constitutional right to have their remonstrances heard and remedied by the legislature.  The plaintiff's argument is at odds with our constitutional form of government, which vests the legislature with the supreme legislative authority.  N.H. CONST. pt. II, arts. 2, 5.  Again, in Chief Justice Doe's words:

> The senate and assembly are the only bodies of men clothed with the power of general legislation. . . . The people reserved no part of it to themselves excepting in regard to laws creating public debt, and can therefore exercise it in no other case.
>
> . . . .
>
> . . . All legislative power is derived from the people; but when the people adopted the constitution, they surrendered the power of making laws to the legislature, and imposed it upon that body as a duty.  They did not reserve to themselves the power of ratifying or adopting laws proposed by the legislature, except in the single case of contracting public debt.

Hayes, 61 N.H. at 325-26, 327.  To the extent that the plaintiff relies upon other provisions of the New Hampshire Constitution to support his appellate arguments, we decline to address those arguments because: he did not sufficiently develop them for our review; or they lack merit and warrant no further discussion; or because his complaint sought no relief under those other provisions.  See Keenan v. Fearon, 130 N.H. 494, 499 (1988) (explaining that "off-hand invocations" of the State Constitution supported by neither argument nor authority warrant no extended consideration); Vogel v. Vogel, 137 N.H. 321, 322 (1993).

In sum, we find no constitutional mandate that the legislature hold a public hearing on a citizen's remonstrance.  Absent such a mandate, whether the legislature unsustainably exercised its discretion by failing to hold such a hearing is a nonjusticiable political question.  See Sumner, 168 N.H. at 672.

C.  Legislative Rules

In arguing that the Speaker and the Senate President were required to assemble the legislature to hear his remonstrances, the plaintiff points to certain legislative rules.  However, "Part II, Articles 22 and 37 of the New Hampshire Constitution contain textually demonstrable commitments to the House and Senate to adopt their own rules of proceedings."  Hughes, 152 N.H. at 284 (quotation omitted).  "The legislature, alone, has complete control and discretion whether it shall observe, enforce, waive, suspend, or disregard its

own rules of procedure." <u>Id</u>. (quotation omitted).  Whether the legislature has adhered to its own rules of procedure "is a matter entirely within legislative control and discretion, not subject to judicial review unless the legislative procedure is mandated by the constitution." <u>Id</u>. (quotation omitted).  Because there is no constitutional mandate that the legislature assemble to hear the plaintiff's remonstrances, we conclude that whether the legislature, by failing to assemble to hear the remonstrances, violated its own procedural rules is a nonjusticiable political question.  <u>See</u> <u>id</u>. at 287-88; <u>Sumner</u>, 168 N.H. at 672.

For all of the above reasons, we uphold the trial court's dismissal of the plaintiff's complaint.  All arguments that the plaintiff raised in his notice of appeal or at oral argument, but did not brief, are deemed waived.  <u>See</u> <u>In re Estate of King</u>, 149 N.H. 226, 230 (2003).  The plaintiff's remaining appellate arguments lack merit and warrant no consideration.  <u>See</u> <u>Vogel</u>, 137 N.H. at 322.

<u>Affirmed</u>.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.